STATE of Wisconsin, Plaintiff-Respondent,

v.

Colleen E. HANSEN, Defendant-Appellant.

Supreme Court

*No. 99–1128–CR. Oral argument January 5, 2001.—Decided May 30, 2001.*

2001 WI 53

(Also reported in 627 N.W.2d 195.)

For the defendant-appellant there were briefs by *Pamela Pepper* and *Cubbie & Pepper, Ltd.*, Milwaukee, and oral argument by *Pamela Pepper*.

For the plaintiff-respondent the cause was argued by *Gregory M. Posner-Weber,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. ANN WALSH BRADLEY, J.   This case is before us on certification from the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (1997–98). The defendant, Colleen E. Hansen (Hansen), asserts that Wis. Stat. § 961.45 (1995–96)[1] bars a state prosecution under Chapter 961 for the same conduct upon which a prior federal conviction is based. We agree and conclude that her prosecution for the state crime of possession of cocaine with intent to deliver is barred by § 961.45, because a prior federal conviction based on

---

[1] All subsequent statutory references to the Wisconsin Statutes are to the 1995–96 volumes unless otherwise indicated.

the same conduct constitutes a conviction for the "same act" under § 961.45.[2] Accordingly, we reverse the circuit court's order denying Hansen's motion for post-conviction relief and the judgment of conviction.

¶ 2.    The facts are undisputed. On September 29, 1997, state narcotics agents arrested Hansen after cocaine was found on her person, in her vehicle, and in her apartment. The State issued a complaint charging Hansen with possession with intent to deliver cocaine.

¶ 3.    The complaint alleged that after observing Hansen on September 29, a state narcotics agent approached her and asked if she was in possession of any contraband. Hansen responded by admitting that she was carrying cocaine in her pocket, which was later determined to weigh 0.2 grams. The complaint noted that a subsequent search of Hansen's vehicle revealed more cocaine with a total weight of 0.8 grams and other contraband, including drug paraphernalia and cutting agents. Finally, the complaint alleged that a subsequent consent search of the defendant's Milwaukee residence revealed 84 grams of cocaine.

¶ 4.    While the state prosecution was pending, a federal grand jury indicted Hansen under 21 U.S.C. § 841(a)(1) and § 846 (1994) for conspiracy to distribute and possess with intent to distribute cocaine.[3] In May 1998, Hansen pled guilty in the Federal District Court

---

[2] Hansen appeals from a judgment of conviction entered in the Circuit Court for Milwaukee County, Judge Dennis P. Moroney, presiding, and the circuit court's order denying post-conviction relief.

Hansen also challenged the circuit court's exercise of sentencing discretion on appeal. However, because we reverse her judgment of conviction, we need not address the issue of sentencing discretion.

[3] 21 U.S.C. § 841(a) (1994) states, in pertinent part:

for the Eastern District of Wisconsin to the federal conspiracy charge.

¶ 5. At the plea hearing the Assistant U.S. Attorney explained the factual basis for Hansen's plea. He informed the court that the evidence that would be presented at trial would include testimony from witnesses regarding Hansen's involvement with other individuals in the sale of cocaine. Included as part of the factual basis for the plea was evidence of the cocaine found on Hansen's person, in her vehicle, and at her apartment:

> On September 29, 1997,...Ms. Hansen was surveilled by various officers in the late afternoon. She left the Blue Ribbon Pub, she went to another bar briefly. She then went to a different residence and picked up [a friend] and then they went to a third bar briefly. Ms. Hansen was confronted and questioned in the parking lot of that bar. She admitted that she had cocaine on her person which turned out to be true. She was searched and had .2 grams of cocaine on her.
>
> She consented to a search of the trunk of her automobile. The trunk contained eight-tenth's of a gram of cocaine in a safe. It also contained a number of scales of a type commonly used for the weighing of cocaine. It contained a shotgun and containers of various powdered chemicals that were sometimes

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally– (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . .

21 U.S.C. § 846 (1994) states:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

used as cutting agents to dilute cocaine. Ms. Hansen admitted at the time that all the materials found in the trunk were hers.

She also consented to a search of her residence. At that time she was living in a residence on South 61st Street in Milwaukee. And she admitted that. . .the agents would find cocaine there. They did search her residence. They found 84 grams of cocaine along with a derringer pistol.

The federal district court accepted Hansen's plea of guilty and sentenced her to a prison term of forty-six months.

¶ 6. Following the federal conviction, Hansen moved for dismissal of the state charge. She argued that Wis. Stat. § 961.45 barred a controlled substance prosecution in Wisconsin where the defendant has already been convicted for the "same act" under federal law or the laws of another state. The circuit court denied the motion on the grounds that § 961.45 required application of the "elements only" test of *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether the prior conviction was for the same act. Because the state offense in this case required proof of different elements than the offense for which Hansen was convicted in federal court, the circuit court concluded § 961.45 was not applicable.

¶ 7. Following the denial of her motion to dismiss, the defendant pled guilty to the violation of § 961.41(1m)(cm)4.[4] Using the criminal complaint as

---

[4] Wisconsin Stat. § 961.41(1m) states in pertinent part:

(1m) Possession with intent to manufacture, distribute or deliver. Except as authorized by this chapter, it is unlawful for any person to possess, with intent to manufacture, distribute or deliver, a controlled substance or a controlled substance analog. . . . Any person who violates this subsection with respect to:

. . .

the factual basis for the plea, the circuit court accepted Hansen's guilty plea and sentenced her to five years imprisonment. Hansen then pursued a motion for post-conviction relief, again arguing that § 961.45 barred her Wisconsin prosecution. The circuit court denied that motion.

¶ 8.  Hansen appealed the judgment of conviction and the order denying her post-conviction relief. The court of appeals certified the following question for our review:

> Does Wis. Stat. § 961.45 bar prosecution for the state crime of possession of cocaine with intent to deliver, where a defendant previously has been convicted, based on the same conduct, for the federal crime of conspiracy to possess cocaine with intent to distribute? Stated differently, is the term "same act" under § 961.45 defined by the elements of the state and federal crimes, or by the conduct for which a defendant is convicted?

¶ 9.  As the certified question indicates, resolution of this case requires an examination and interpretation of § 961.45. Statutory interpretation is a question of law that we decide independently of the determination rendered by the circuit court. *State v. Sprosty*, 227 Wis. 2d 316, 323, 595 N.W.2d 692 (1999). The goal of statutory interpretation is to discern the

---

(cm)  Cocaine or cocaine base, or a controlled substance analog of cocaine or cocaine base, is subject to the following penalties if the amount possessed, with intent to manufacture, distribute or deliver, is:

. . .

4.  More than 40 grams but not more than 100 grams, the person shall be fined not more than $500,000 and shall be imprisoned for not less than 5 years nor more than 30 years.

legislative intent underlying a statute. *State v. Corey J.G.*, 215 Wis. 2d 395, 411, 572 N.W.2d 845 (1998).

¶ 10.  As a general matter, § 961.45 provides a form of statutory double jeopardy protection that applies in the context of controlled substance offenses under Chapter 961. The statute reads:

> If a violation of this chapter is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state.

Wis. Stat. § 961.45. The effect of § 961.45 is to abrogate the "dual sovereignty doctrine" in the context of controlled substance prosecutions. *State v. Petty*, 201 Wis. 2d 337, 358, 548 N.W.2d 817 (1996). Under the dual sovereignty doctrine, there is no constitutional bar to successive prosecutions for the same offense by different sovereigns. *United States v. Lanza*, 260 U.S. 377, 382 (1922); *Petty*, 201 Wis. 2d at 358. Section 961.45 thus operates as a limitation on the State's power to prosecute where no constitutional limit exists. Our inquiry today addresses the scope of the statutory protection against successive prosecutions.

¶ 11.  The court of appeals and the parties correctly conclude that our interpretation of the statutory phrase "same act" is determinative of our inquiry into the scope of the § 961.45 double jeopardy protection. Hansen argues that "same act" must be construed to mean "same conduct." She asserts that under this interpretation, the state prosecution would be barred because the prior federal conviction is premised in part on the same conduct: her possession of the cocaine

found on her person, in her vehicle, and in her residence.

■

¶ 12.   The State asserts that "same act" must be construed to mean the crime as defined by its statutory elements. In other words, the State maintains that § 961.45 is intended to incorporate the "same elements" test of *Blockburger v. United States.*[5] This test is recognized in most jurisdictions, including Wisconsin, as the controlling test in determining whether multiple prosecutions are for the "same offense" in contravention of the double jeopardy protection. Under *Blockburger*, successive prosecutions are barred "unless each offense necessarily requires proof of an element the other does not." *State v. Kurzawa*, 180 Wis. 2d 502, 524, 509 N.W.2d 712 (1994).

¶ 13.   If we interpret § 961.45 to incorporate the "elements only" test, the statute would not bar Hansen's state prosecution. The federal offense requires proof of a conspiracy, which the state offense of possession with intent to deliver does not. The state offense requires proof of possession, which the federal offense of conspiracy does not. *Compare* 21 U.S.C. § 841(a) and § 846 *with* Wis. Stat. § 961.41(1m)(cm)4; *see also United States v. Felix*, 503 U.S. 378, 389 (1992) ("[A] substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes.").[6]

---

[5] The test we refer to as the *Blockburger* "elements only" test has several names, including the "same evidence" test and the "same in law and fact" test. Whatever label is used, the focus of any *Blockburger* inquiry is the crime as defined by its statutory elements.

[6] While *Blockburger* would not bar conviction for both as a constitutional matter, Wis. Stat. § 939.72(2) would bar a state

¶ 14. Our initial inclination is to conclude that Hansen's interpretation of "same act" as meaning "same conduct" is more consistent with the plain and ordinary meaning of the term. *See The American Heritage Dictionary of the English Language* 17 (1992) (defining "act" as "[s]omething done or performed"). However, we stated in a footnote in *Petty*, 201 Wis. 2d at 361 n.13, that in the absence of any documented statements of legislative intent, the structure of § 961.45, and the goals of the uniform act in which it originated, required reading the statute consistent with *Blockburger. Id.*

¶ 15. Although the State's interpretation of § 961.45 is seemingly inconsistent with the common definition of "act," neither the State's nor Hansen's interpretation is unreasonable. Accordingly, we consider the statute to be ambiguous. *See State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). As a result of this ambiguity and the lack of any documented statements of legislative intent, we will seek to determine the legislative intent underlying § 961.45 through an inquiry into the legislative history of the statute viewed in light of double jeopardy jurisprudence as it existed at the relevant times.

¶ 16. We begin by examining the legislative history of § 961.45. Of primary importance to this inquiry is the fact that § 961.45, as part of the Uniform Controlled Substances Act (UCSA), did not originate with the Wisconsin legislature. The UCSA is a product of the National Conference of Commissioners on Uniform State Laws (NCCUSL). Where, as here, the legislature makes a verbatim enactment of a uniform act provi-

conviction for both the inchoate crime of conspiracy and the substantive offense that is the objective of the conspiracy. Wis. Stat. § 939.72(2) (1999–2000).

sion, we must be concerned with the intent of the drafters of the uniform law, and will presume the intent of the drafters is the intent of the legislature in the absence of evidence to the contrary. *See* 2B Sutherland, *Statutory Construction* § 52:05 (6th ed. 2000).

¶ 17.   Section 961.45 began as § 405 of the original UCSA, approved by NCCUSL in 1970. Unif. Controlled Substances Act (1970) § 405, 9IV U.L.A. 684 (1997). The original UCSA was promptly adopted by the Wisconsin legislature, and § 405 became Wis. Stat. § 161.45. § 16, ch. 219, Laws of 1971; Wis. Stat. § 161.45 (1971–72). In 1994, NCCUSL revisited the UCSA and promulgated a revised version. No substantive changes were made to the provision at issue today. Unif. Controlled Substances Act (1994) § 418, 9III U.L.A. 561 (1997). Our legislature adopted the 1994 version of the UCSA in 1995, and in the process renumbered § 161.45 to its current § 961.45. 1995 Wis. Act 448, § 272.

¶ 18.   While the precise language of § 961.45 is directly traceable to the 1970 uniform act, similar language is found in a predecessor uniform act, also adopted by the Wisconsin legislature. Section 21 of the Uniform Narcotic Drug Act (UNDA) stated:

> No person shall be prosecuted for a violation of any provision of this act if such person has been acquitted or convicted under the Federal Narcotic Laws of the same act or omission which, it is alleged, constituted a violation of this act.

Unif. Narcotic Drug Act § 21, 9B U.L.A. 518 (1966) (footnote omitted).[7] This UNDA provision was

---

[7] Earlier drafts of the UNDA would have provided protection even more extensive than that ultimately adopted by NCCUSL:

approved by NCCUSL in 1932 and was adopted by the Wisconsin legislature in 1935. § 1, ch. 306, Laws of 1935. Section 21 was codified as Wis. Stat. § 161.21 (1935). From 1935 to 1971, Wis. Stat. § 161.21 operated as an abrogation of the dual sovereignty doctrine in the narcotics context, barring a Wisconsin prosecution following a federal prosecution for the "same act or omission."[8]

¶ 19.  Although we have been able to trace the historical roots of § 961.45 with some precision, we agree with the parties that there is frustratingly little in the drafting records of the Wisconsin legislature or NCCUSL to guide our interpretation of the term "same act" as used in § 961.45 or its predecessor.[9] Despite

No person shall be prosecuted for a violation of any of the provisions of this act if such person shall have been prosecuted and duly acquitted or convicted under the Federal Narcotic Act for the same, or substantially the same act or omissions which, it is alleged, constitute a violation of this act.

*Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Forty-First Annual Conference* 401–02 (1931).

[8] The UNDA provision contains a reference to "omission" because the UNDA created criminal omission liability. *See generally* Wis. Stat. Ch. 161 (1935). The UCSA, on the other hand, creates liability only for affirmative acts (*i.e.*, possession, manufacture, distribution, and delivery). *See generally* Wis. Stat. Ch. 961 (1999–2000).

[9] Other than the language of the provisions as drafted, the only indicia of legislative intent to be found in NCCUSL's records are passing references in the materials concerning the UNDA. For example, the prefatory note to the UNDA states that "a section was inserted providing against double jeopardy." Unif. Narcotic Drug Act (1932), 9B U.L.A. 8 (1987). The prefatory note to an early draft of the UNDA states "[the draft] has also tried to eliminate any double jeopardy which might be

that fact, the statutory history that we have presented above provides important historical background. Absent direct evidence of the legislature's or NCCUSL's intent, we turn to the context in which the language of the statute was adopted. In particular we turn to the use of the phrase "same act" in the UCSA and the UNDA in the context of the well-developed body of double jeopardy jurisprudence in existence at the time of the passing, adoption, and revision of those uniform acts. " '[A]ll legislation must be interpreted in the light of the common law and the scheme of jurisprudence existing at the time of its enactment.' " *In re Custody of D.M.M.*, 137 Wis. 2d 375, 389–90, 404 N.W.2d 530 (1987) (quoted source omitted).

¶ 20.   While we can glean little from the recorded history as to the intended scope of "same act," we cannot ignore that as § 961.45 and its precursor were created and revised there was an ongoing dialogue in the country as to the scope of the state and federal double jeopardy protections. In that dialogue courts consistently used a common lexicon that includes the terms "act" and "offense" to explain double jeopardy principles.

¶ 21.   Having reviewed double jeopardy case law as it existed at the relevant time, including *Blockburger* and the cases of this court, we find the term "act" and "same act" to be used with remarkable consistency to describe the underlying conduct which comprises an offense. Likewise, we find that the term "offense" is used to describe the crime as defined by its statutory elements.

---

incurred by persons violating the state law and the Harrison Act." *Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Thirty-Eighth Annual Meeting* 323 (1928).

¶ 22. By asking us to construe "same act" to mean the crime as defined by the statutory elements, the State is asking us to translate "same act" as "same offense." However, the State's interpretation conflicts with the marked distinction between "act" and "offense" found in the case law. The terms are often juxtaposed, and this distinction has been described as the "act-offense dichotomy." Otto Kirchheimer, *The Act, the Offense and Double Jeopardy*, 58 Yale L.J. 513, 513 (1949). Given this dichotomy in the double jeopardy context, we conclude that NCCUSL intended the term to have the meaning commonly ascribed to it in that context: "same act" meant "same conduct."

¶ 23. As evidence of this dichotomy, we observe that *Blockburger* itself draws the distinction between acts and offenses that belies the State's interpretation of § 961.45. While the State argues that "same act" should be construed to incorporate the *Blockburger* test, that position cannot be reconciled with the language of *Blockburger*. In the oft-quoted formulation of the test to determine whether multiple convictions constitute convictions for the "same offense" in contravention of the Fifth Amendment's Double Jeopardy Clause, the *Blockburger* Court explained:

> The applicable rule is that, where the *same act* or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 303 (emphasis added). The Court also stated: "Here there was but one sale, and the question is whether, both sections being violated by the *same*

*act*, the accused committed two offenses or only one."
*Id.* (emphasis added).

¶ 24.　The *Blockburger* Court thus used the term "same act" to describe the conduct which formed the basis of an offense. When describing a crime as defined by its elements, the *Blockburger* Court uses the term "offense," thereby tracking the language of the Fifth Amendment, which defines the protection against double jeopardy by reference to the "offence." U.S. Const. amend. V.

¶ 25.　Since 1932, innumerable federal and state courts quoting *Blockburger* have carefully distinguished between acts and offenses, with acts describing the conduct which forms the basis of an offense.[10] *Blockburger* is notable, not only because of its subsequent prevalence, but also because it was

---

[10] In recent years, this court in particular has constructed its double jeopardy jurisprudence around *Blockburger v. United States*, 284 U.S. 299 (1932), often drawing the act-offense distinction. *See, e.g., State v. Derango*, 2000 WI 89, ¶ 28, 236 Wis. 2d 721, 613 N.W.2d 833 ("In other words, because double jeopardy protection prohibits double punishment for the 'same offense,' the focus of the inquiry is whether the 'same offense' is actually being punished twice, or whether the legislature indeed intended to establish separate offenses subjecting an offender to separate, although cumulative, punishments for the same act."); *State v. Vassos*, 218 Wis. 2d 330, 335, 579 N.W.2d 35 (1998) (quoting *Blockburger*); *see generally State v. Kurzawa*, 180 Wis. 2d 502, 509 N.W.2d 712 (1994) (discussing *Blockburger* extensively).

*Blockburger*, as codified in § 939.66(1), is a mainstay of our lesser-included offense jurisprudence. *See* Wis. Stat. § 939.66(1) (1999–2000); *State v. Lechner*, 217 Wis. 2d 392, 405, 576 N.W.2d 392 (1998). *Blockburger* is also codified at Wis. Stat. § 939.71 as a statutory bar to subsequent prosecutions. *Vassos*, 218 Wis. 2d at 335.

decided in January 1932, ten months before NCCUSL approved the UNDA and the use of the language "same act or omission" in its statutory double jeopardy protection.

¶ 26. We also note the Court has drawn the same act-offense distinction in numerous cases regarding the dual sovereignty doctrine. *See generally Abbate v. United States*, 359 U.S. 187, 189–95 (1959); *Lanza*, 260 U.S. at 382 ("The defendants thus committed two different offenses by the same act. . . .").

¶ 27. In addition to the Supreme Court precedent, we find the act-offense dichotomy drawn most prominently in state court decisions. While *Blockburger* predominates today under the Fifth Amendment as extended to the states through the Fourteenth Amendment, the state constitutions and state common law formerly provided protection coextensive with *Blockburger*.[11] State courts similarly drew the distinction between acts and offenses and consistently used the term "act" and "same act" to describe the conduct comprising the offense. This distinction was drawn before the creation of the 1932 uniform act and up to and beyond adoption of the UCSA.

¶ 28. For example, at an early date the Ohio Supreme Court explained that the term "same offense" is not the equivalent of "same act":

> The words 'same offense' mean same offense, not the same transaction, not the same acts, not the same circumstances or same situation.

---

[11] The Fifth Amendment double jeopardy protection was extended to the states through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784 (1969).

*State v. Rose*, 106 N.E. 50, 51 (Ohio 1914). Other state supreme courts would later use the same language. *E.g., Burton v. State*, 79 So. 2d 242, 247 (Miss. 1955); *State v. Goodson*, 217 P.2d 262, 264 (N.M. 1950); *State v. Taylor*, 293 N.W. 219, 225 (N.D. 1940); *State v.* *Winger*, 282 N.W. 819, 821 (Minn. 1938). The Florida Supreme Court further explained:

> The words 'same offense' mean same crime or omission; not necessarily the same acts, circumstances or situation out of which the crime or omission arises. *Driggers v. State*, 137 Fla. 182, 188 So. 118; *State v. Corwin*, 106 Ohio St. 638, 140 N.E. 369; *State v. Winger*, 204 Minn. 164, 282 N.W. 819, 119 A.L.R. 1202. The test is whether the defendant has been twice in jeopardy for the same identical crime, not whether he has been tried before upon the same acts, circumstances or situation the facts of which may sustain a conviction for a separate crime.

*State v. Bowden*, 18 So. 2d 478, 480 (Fla. 1944).[12]

---

[12] Other examples of state cases drawing the act-offense distinction are too numerous to cite. However, we offer the following selection of cases from the courts of last resort of numerous states decided over the past century that pointedly draw the distinction: *State v. Stewart*, 363 N.W.2d 368, 372 (Neb. 1985) ("The constitutional prohibition against double jeopardy has no application where two separate and distinct crimes are committed as the result of one and the same act, because the constitutional proscription is directed to the identity of the offense and not to the act."); *State v. La Porte*, 365 P.2d 24, 26 (Wash. 1961) ("Double jeopardy does not exist where a defendant stands charged with different offenses, even though they arise out of the same act."); *State v. Bradbury*, 110 A.2d 710, 712 (Vt. 1955) ("It is not second jeopardy for the same act, but a second jeopardy for the same offense that is prohibited."); *People v. Garman*, 103 N.E.2d 636, 639 (Ill. 1952) ("Where the

¶ 29. In addition, this court was one of many state courts signifying the distinction between acts and offenses by stating: " 'The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense.' " *State v. Brooks*, 215 Wis. 134, 140, 254 N.W. 374 (1934) (quoting *Morey v. Commonwealth*, 108

offenses, though arising from the same act, are separate and distinct in law, the defense of former jeopardy is not available regardless of how closely they are connected in point of fact."); *Orcutt v. State*, 3 P.2d 912, 914 (Okla. Crim. App. 1931) (" 'The same act may constitute two or more offenses which are distinct from each other. In such cases the accused may be separately prosecuted and punished for each, and a conviction or acquittal or prosecution for one will not constitute an acquittal and a bar for the other.' " (quoted source omitted)); *State v. Wasinger*, 298 P. 763, 764 (Kan. 1931) ("It was within the power of the Legislature to create two or more distinct offenses growing out of a single act or transaction, each punishable by itself, and a conviction or acquittal on one would be no bar to a conviction under the other. . . .'Hence the crimes, although committed by the same act, are different crimes, and a prosecution for one is no bar to a prosecution for the other.' " (quoted source omitted); *State v. Mills*, 150 S.E. 142, 143 (W.Va. 1929) ("The courts generally refuse to sustain the plea of former jeopardy on the ground that there are two offenses arising from the same act."); *Duvall v. State*, 146 N.E. 90, 92–93 (Ohio 1924) ("It is therefore our conclusion that. . .when the same facts constitute two or more offenses, and the facts necessary to convict on a second prosecution would not necessarily have convicted on the first, the first prosecution will not be a bar to the second, although the offenses were both committed at the same time and by the same act."); *State v. Farnham*, 112 A. 258, 259–60 (Me. 1921) ("If the same acts constitute another and different offense,. . .the respondent may be punished for the other offense.").

Mass. 433, 434 (1871)).[13] The same distinction between acts and offenses has long been noted by scholars and treatise writers addressing the double jeopardy questions posed by multiple prosecutions. *E.g.*, I *Wharton's Criminal Law* 509 (11th ed. 1912) ("Same act may constitute two or more offenses which are distinct from each other.").

¶ 30.  Given the marked distinction between "acts" and "offenses" in the national double jeopardy discourse ongoing when the UNDA was created and persisting up to and beyond the passage of the UCSA, we conclude that NCCUSL intended the phrase "same act" to share the meaning attributed to it in the case law and secondary materials. We impute to NCCUSL, a learned body of lawyers, judges, and scholars, a familiarity with the fundamentals of double jeopardy jurisprudence. We do not believe those familiar with these concepts at that time would use the phrase "same act" in this context to mean anything other than "same conduct." Because the legislature adopted § 961.45 from the UCSA without revision or any other indica-

---

[13] *See also Schroeder v. State*, 222 Wis. 251, 260, 267 N.W. 899 (1936).

This maxim, which originated in the 1871 case of *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871), has been repeated often. The United States Supreme Court quoted the phrase with approval in *Gavieres v. United States*, 220 U.S. 338, 342 (1911). The following state court cases contain the same or similar language: *State v. Cox*, 339 So. 2d 1374, 1377 (Miss. 1976); *State v. Calvo*, 121 So. 2d 244, 249 (La. 1960); *State v. Barefoot*, 86 S.E.2d 424, 427 (N.C. 1955); *State v. Smith*, 95 A.2d 789, 790 (N.H. 1953); *Hamblen v. State*, 191 S.W.2d 537, 539 (Tenn. 1945); *Bingaman v. State*, 24 S.W.2d 969, 970 (Ark. 1930); *State v. Kingsbury*, 266 P. 174, 176 (Wash. 1928); *State v. Marchindo*, 211 P. 1093, 1098 (Mont. 1922).

tion of a contrary legislative intent, we attribute the intent of NCCUSL to the legislature.

¶ 31.   We recognize that we previously addressed the scope of § 961.45 in a footnote in *State v. Petty*. After noting the dearth of proffered authority to the contrary, the *Petty* court advanced at footnote 13 that "the statutory language tracks the *Blockburger* test as it expressly requires an identity of law (between the violation of 'this chapter' and the federal law or that of another state) as well as an identity of fact (the 'same act')." 201 Wis. 2d at 361 n.13. The State relies on this same argument in support of its construction of § 961.45 and asserts that under stare decisis we are bound by the brief discussion in footnote 13 of the *Petty* opinion.

¶ 32.   Like the court of appeals in its memorandum certifying this case for our review, we decline to treat footnote 13 as binding precedent because it is inconsistent with a preceding footnote in that same opinion. The issue in *Petty* was whether § 961.45 barred a state prosecution which preceded the federal prosecution. In footnote 10, the *Petty* court specifically stated that it would not reach the issue before the court in the present case, stating "we need not reach the issue of whether the two prosecutions were for the 'same act.'" *Id.* at 360 n.10. Nevertheless, the court proceeded to address the issue three footnotes later, providing the non-essential commentary with which today's opinion conflicts. *Id.* at 361 n.13.

¶ 33.   It is unclear which footnote the *Petty* court intended to embrace and which it intended to delete. What is clear, however, is that because of the internal inconsistency, no judicial precedent was established in the first instance. The State urges us not merely to heed footnote 13, but to elevate it to the status of con-

trolling judicial precedent, sufficient to permanently dictate the interpretation of the statute. Such a position ignores *Petty* footnote 10, which disavows the discussion in *Petty* footnote 13.

¶ 34.   If, as the State asserts, footnote 13 resolves the question before the court today, there would be no need for the court of appeals to certify the question to us. Instead, it could merely decide this case on settled law. Yet, the court of appeals certified the case, noting that "[a]n important difference in the chronology of Petty's prosecutions, however, ultimately led the [*Petty*] court *not* to decide the issue Hansen now presents." In concluding its certification memorandum, the court of appeals again emphasized that the *Petty* court did not decide the issue before us today. It stated that the "*Petty* [court], however, not needing to resolve the issue Hansen now presents, did not define 'same act'." Thus, we agree with the court of appeals that this case presents the first time that we address this legal question.

¶ 35.   In addition to the internal inconsistency that defeats the precedential value of footnote 13, we also note that the brief discussion of the statute in *Petty* footnote 13 did not have the benefit of a review of the historical context in which the language of the statute was adopted. In footnote 13, the *Petty* court emphasized that the "defendant offer[ed] no authority" and that the "defendant has failed to provide any authority" to support his reading of the statute. *Petty*, 201 Wis. 2d at 361 n. 13. The court then engaged in a four-sentence inquiry into the legislative intent in *Petty* footnote 13. This inquiry was incomplete. The court did not fully examine the statute or its predecessor in the proper historical context. It referenced only the UCSA drafter's intent to provide "an interlocking trellis of

drug laws" between state and federal governments. *Id.* Such a statement of intent cannot justify a construction of the statute contrary to that called for by the language of the statute as properly construed.

¶ 36. Moreover, *Petty* footnote 13's reliance on this intent is undermined by the realities of federal prosecution. It is a long-standing policy of the federal Department of Justice to avoid duplicating prior state prosecutions "based on substantially the same act(s) or transactions" except under certain circumstances. This policy was formulated in 1959 and, as a result of the Supreme Court's decision in *Petite v. United States*, 361 U.S. 529 (1960), it would have been well known to the drafters of the UCSA.[14] We fail to see how the goal of an "interlocking trellis" is served through an interpretation of § 961.45 that leads to a wholly disjointed set of

[14] *See Petite v. United States*, 361 U.S. 529, 531 (1960) (explaining formulation of policy in 1959); *see also Rinaldi v. United States*, 434 U.S. 22, 28 (1977) (explaining that *"Petite"* policy arose as a result of two 1959 Supreme Court decisions).

The United States Attorney's Manual explains the *"Petite* policy"* as follows:

> This policy precludes the initiation or continuation of a federal prosecution, following a prior state or federal prosecution based on substantially the same act(s) or transaction(s) unless three substantive prerequisites are satisfied: first, the matter must involve a substantial federal interest; second, the prior prosecution must have left that interest demonstrably unvindicated; and third, applying the same test that is applicable to all federal prosecutions, the government must believe that the defendant's conduct constitutes a federal offense, and that the admissible evidence probably will be sufficient to obtain and sustain a conviction by an unbiased trier of fact. In addition, there is a procedural prerequisite to be satisfied, that is, the prosecution must be approved by the appropriate Assistant Attorney General.

United States Department of Justice, *United States Attorney's Manual* § 9–2.031 (1997).

prosecutorial restrictions on each side of the federal-state divide. Rather, the interpretation of § 961.45 that we adopt today advances the goal of an "interlocking trellis" by further harmonizing federal and state practice.

¶ 37.  Contrary to the discussion in *Petty* footnote 13, § 961.45 does not require identity in law between the prior conviction or acquittal and the alleged violation of Chapter 961. The phrase in § 961.45 referring to "a violation of this chapter" is merely the language necessary to limit the scope of the provision to Chapter 961. Indeed, in the absence of that language, § 961.45 would apply to the entire statutory code. Nothing in the statute indicates a directive to employ the *Blockburger* "elements only" analysis.

¶ 38.  At oral argument, the State emphasized the rule of statutory construction that legislative inaction following a judicial interpretation of a statute may give rise to a presumption of legislative acquiescence in that interpretation. The State advances that we must infer acquiescence from the five years of inaction since *Petty* was decided. While the presumption that arises from legislative inaction may carry the day in some cases, this rule of statutory construction has also been characterized as a " 'weak reed upon which to lean.' " *Green Bay Packaging, Inc. v. DILHR*, 72 Wis. 2d 26, 36, 240 N.W.2d 422 (1976) (quoted source omitted). Reliance on this canon is even weaker when we are asked to infer acquiescence from the legislature's inaction in response to a footnote which is not precedential and reaches issues unnecessary to the determination of a case. We therefore refuse to give the legislative inaction any conclusive effect.

¶ 39.   The parties also dispute the precedential value and interpretations of the courts of other states. We have found no case law from other jurisdictions that examines the historical context of NCCUSL's intent in drafting the provision at issue.[15] Because we believe that inquiry to be determinative, we rest our decision on our own inquiry into the legislative intent as evidenced by NCCUSL's choice of language understood in light of the existing jurisprudential framework. We acknowledge that our interpretation is contrary to that of a New Jersey appellate court in cases cited by the parties. *See State v. Ableman*, 342 A.2d 228 (N.J. Super. Ct. App. Div. 1975); *State v. Krell*, 311 A.2d 399 (N.J. Super. Ct. App. Div. 1973). Concededly the goal of any uniform act is uniformity. However, we will not acquiesce for the sake of uniformity to an interpretation with which we do not agree.

¶ 40.   We conclude our discussion of statutory interpretation by observing that while not necessarily

[15] We note that the parties have offered case law from states with vastly different statutes than § 961.45. For example, there was discussion in the briefs of the New York decision in *People v. Abbamonte*, 371 N.E.2d 485 (N.Y. 1977). Although *Abbamonte* concerned successive federal and state drug prosecutions, the parties misconceive the provision at issue in that case. The statute was not the New York analog to § 961.45; that is, it was not a statutory double jeopardy provision specific to controlled substances offenses. The New York statute at issue in that case was the New York analog to § 939.71, a general statute of criminal procedure that prevents subsequent prosecutions following conviction or acquittal in another jurisdiction. *See* N.Y. Crim. Proc. Law § 40.20 (McKinney 1992). The provision was adopted by the New York legislature in 1970. 1970 N.Y. Laws 996. New York did not adopt the UCSA until 1972. 1972 N.Y. Laws 878. New York's analog to § 961.45 is N.Y. Pub. Health Law § 3396(3) (McKinney 1992).

indicative of the intent of the drafters of the UCSA, our construction of § 961.45 avoids several incongruities with other provisions of the Wisconsin Statutes that define the relationship between acts and offenses and that codify double jeopardy principles. We have construed the language of Wis. Stat. § 939.66(1) and § 939.71 to incorporate *Blockburger*. *State v. Vassos*, 218 Wis. 2d 330, 335, 579 N.W.2d 35 (1998) (§ 939.71); *State v. Lechner*, 217 Wis. 2d 392, 405, 576 N.W.2d 912 (1998) (§ 939.66(1)). Because the language of § 961.45 is so vastly different from either of those statutes, construing § 961.45 to incorporate *Blockburger* would lead to inconsistent construction of our statutes.

¶ 41. Also, the State's asserted interpretation of "same act" conflicts with the word "act" as used in § 939.65 and § 939.71. *See* Wis. Stat. §§ 939.65 & 939.71 ("if an act forms the basis for a crime punishable under more than one statutory provision"). In both of those provisions "act" signifies the conduct which constitutes a criminal offense.

¶ 42. Finally, our construction avoids a reading of § 961.45 that would render it largely superfluous. Were § 961.45 read to incorporate *Blockburger*, it would provide a protection against a successive Wisconsin prosecution to a large degree duplicative of the protection provided in § 939.71. Section 939.71, as interpreted by this court, requires application of *Blockburger* to determine whether a conviction or acquittal "under the laws of another jurisdiction" bars a conviction for the same offense in Wisconsin. Wis. Stat. § 939.71. The statutes differ of course in that § 961.45 applies to prosecutions and § 939.71 applies to convictions.

¶ 43. Having concluded that § 961.45 bars a Wisconsin prosecution where the defendant has previously

been acquitted or convicted for the same conduct under federal law or the laws of another state, we now apply the statute to the facts of this case. We note that the State fails to argue that the successive state and federal prosecutions were not for the same conduct. The factual basis of the federal conviction included a description of Hansen's conduct on September 29, 1997 that mirrored the conduct described in the state complaint. The conduct of which the federal prosecution consisted included Hansen's conduct in possessing cocaine on her person, in her automobile, and at her home. This same conduct was the sole basis for the conviction in state court. As such, we must conclude that the state prosecution was for the same conduct for which Hansen has previously been convicted in federal court. By failing to raise an argument in this regard, we presume the State recognizes that the interpretation of § 961.45 we adopt today compels this result.

¶ 44. In sum, we conclude that Wis. Stat. § 961.45 bars a Wisconsin prosecution under Chapter 961 for the same conduct on which a prior federal conviction is based. Recognition of the context in which the language "same act" was chosen requires this construction of the statute. Because Hansen's state conviction is for the same conduct for which she was previously convicted in federal court, we reverse the judgment of conviction and the circuit court's order denying her post-conviction relief.

*By the Court.*—The judgment and order of the circuit court are reversed.

¶ 45. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I join the majority opinion. I

write separately to address the *Petty*[1] issue set forth in the dissent.

¶ 46.    I wholeheartedly acknowledge the importance of stare decisis in a system based on a rule of law. The dissent cites a few of a plethora of opinions (some written by me) to highlight the high hurdle that courts must overcome when they seek to revisit past precedent.

¶ 47.    My point of disagreement with the dissenting opinion lies not in its reverence toward stare decisis, nor in its explanation of its precepts, but rather in its application of these important principles to a footnote in *Petty*.

¶ 48.    It is improper to erect the high bar of stare decisis until one has successfully cleared the high bar of showing that *Petty* note 13 is a judicial precedent in the first instance. The dissent ducks the bar, ignoring the blatant conflict between *Petty* note 10 (declaring that the opinion "need not reach the issue of whether the two prosecutions were 'for the same act' ") and *Petty* note 13 (apparently addressing whether the two prosecutions were for the same act based on the defendant's failure to offer authority, reasoning, or explanation for his position). If *Petty* note 10 disavows *Petty* note 13, why should this court now be bound by *Petty* note 13?

¶ 49.    I agree with the majority opinion and the Court of Appeals that the *Petty* opinion did not reach the issue presented in the case at bar, that is, whether the federal and state prosecutions were for the "same act."

¶ 50.    For    the    reasons    set    forth,    I    write separately.

---

[1] *State v. Petty*, 201 Wis. 2d 337, 360 n.10, 361 n.13, 548 N.W.2d 817 (1996).

¶ 51. JON P. WILCOX, J. *(dissenting)*. The majority opinion reinterprets Wis. Stat. § 961.45 (1995–96), which this court first interpreted five years ago in a unanimous decision. Majority op. at ¶¶ 15–42; *State v. Petty*, 201 Wis. 2d 337, 354–62, 548 N.W.2d 817 (1996). In so doing, the majority repudiates our recent *Petty* decision, but ducks the high bar for overturning precedent on a point of statutory construction. The majority's unwillingness to engage in the appropriate analysis is understandable; its opinion contains little justification to underpin its departure from our controlling precedent. Because the majority opinion oversteps its judicial role in the face of controlling precedent, I respectfully dissent.

I

¶ 52. The basic problem pervading the majority's troubling opinion is its failure to engage in the analysis necessary to overturn an earlier decision of this court. Rather than answering the certified question under our controlling *Petty* decision, which directly addressed the meaning of Wis. Stat. § 961.45, the majority launches into a de novo statutory interpretation of § 961.45, thereby ignoring the longstanding rule that this court "is bound by its own precedent." *Petty*, 201 Wis. 2d 354–62; majority op. at ¶ 15; *Rose Manor Realty Co. v. City of Milwaukee*, 272 Wis. 339, 346, 75 N.W.2d 274 (1956).

¶ 53. The de novo statutory interpretation in which the majority indulges is only appropriate when we are confronted with a case that presents an unresolved point of statutory construction. In such a case, we will engage in statutory interpretation to discern the legislative intent. *State v. Sprosty*, 227 Wis. 2d 316, 323, 595 N.W.2d 692 (1999). This is in accord with

the United States Supreme Court. As Justice Hugo Black observed, the Supreme Court engages in statutory construction "not because the Court has any special ability to fathom the intent of Congress, but rather because interpretation is unavoidable in the decision of the case before it." *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 257 (1970) (Black, J., dissenting). Similarly, we have no special ability to fathom the intent of the Wisconsin legislature, but we must engage in statutory interpretation when a particular case demands it. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("[i]t is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule."). That is our adjudicative role, which is grounded in the Wisconsin Constitution, Article VII, Section 2.

¶ 54.    But once this court has spoken on a point of statutory construction, it is bound by that interpretation absent a special justification. Even if a subsequent majority believes that this court's previous construction was wrong, the earlier ruling should be remedied by the legislature in its constitutionally defined legislative capacity.[1] This court's subsequent belief that its previous ruling on a point of statutory construction was unreasonable, or perhaps even wrong, is legislative in

---

[1] *See Patterson v. McLean Credit Union*, 491 U.S. 164, 172–73 (1989) (holding that absent a "special justification," the Court declines to overrule a point of statutory interpretation, leaving it to Congress to alter what the Court has done); *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984) (ruling that "any departure from the doctrine of *stare decisis* demands special justification."); Wis. Const., art. IV, § 1 ("The legislative power shall be vested in a senate and assembly.").

nature, not adjudicative.[2] At that point, we no longer have the legitimacy of adjudicative necessity to rule on that point of statutory construction.

¶ 55. Staying within our adjudicative role does not stifle all development in the law. This court has acknowledged that if the law "is to keep pace with social developments and progress, [it] cannot remain static, and precedents consisting of decisions of this court rendered in the latter half of the nineteenth century sometimes are outmoded and should not be blindly followed." *Leach v. Leach*, 261 Wis. 350, 359, 52 N.W.2d 896 (1952). The tension between this vitality of the law and adherence to our precedent is resolved through a third principle:

> A court's decision to depart from precedent is not to be made casually. It must be explained carefully and fully to insure that the court is not acting in an arbitrary or capricious manner. A court should not depart from precedent without sufficient justification. Justification for departure from precedent could include changes or developments in the law that undermine the rationale behind a decision; the

---

[2] As the Supreme Court explained in *Patterson*, a party asking a court to overrule a previous decision on a point of statutory construction bears a greater burden than a party asking a court to overrule a previous decision on a constitutional question. 491 U.S. 164, 172. This higher burden stems from the fact that overruling a previous decision on a point of statutory construction implicates legislative power, whereas overruling a previous decision on a constitutional question is squarely within the province of the judiciary. *Id.*; *see also Marbury v. Madison*, 5 U.S. 137, 178 (1803)("[i]f, then, the courts are to regard the constitution, and the constitution is superior to any ordinary act of the legislature, the constitution, and not such ordinary act, must govern the case to which they both apply.").

need to make a decision correspond to newly ascertained facts; or a showing that the precedent has become detrimental to coherence and consistency in the law. No change in the law is justified by 'a change in the membership of the court or a case with more egregious facts.'

*State v. Stevens*, 181 Wis. 2d 410, 442, 511 N.W.2d 591 (1994) (Abrahamson, J. concurring) (citations omitted). Accordingly, we must engage in careful analysis when repudiating our precedent on a point of statutory construction in order to remain within our constitutionally defined adjudicative role. In this case, the majority resorts to judicial lawmaking rather than engaging in the appropriate analysis, thereby overstepping the court's adjudicative role.

## II

¶ 56. In reinterpreting Wis. Stat. § 961.45, the majority fails to present a special justification for its departure from our precedent. The majority acknowledges that the State's reading of § 961.45 as tracking *Blockburger* is reasonable. *Blockburger v. United States*, 284 U.S. 299 (1932). Majority op. at ¶ 15. Because the State merely advances our *Petty* reading of § 961.45, I consider it controlling.

¶ 57. The facts in *Petty* are strikingly similar to the case at hand. There, a federal court convicted Petty of conspiracy to possess cocaine with intent to distribute and a state court convicted him of possession of a controlled substance (cocaine) with intent to deliver while armed. *Petty*, 201 Wis. 2d at 343–44. As in the present case, the charges at issue arose from the same course of conduct or criminal transaction—Petty's possession of cocaine with intent to deliver on August 1, 1991. *Id.* The second issue raised in *Petty* was the same

as the issue present here: whether the conviction in state court must be vacated in light of the federal conviction because it violated Wis. Stat. § 161.45 (renumbered § 961.45). *Id.* at 354. To avoid conviction for the same course of conduct or criminal transaction, Petty argued that the legislature intended Wis. Stat. § 161.45 to provide a broader analysis than the *Blockburger* test of whether the offenses are identical in law and fact. 201 Wis. 2d at 361 n.13, 362. In response to this argument, we wrote:

> [Petty] offers no authority for this proposition, which seemingly contradicts the language of the statute. As the State recognizes, there is no support in the legislative history to substantiate a claim that either the drafters of the Uniform Acts or the successive Wisconsin legislatures intended to deviate from prevailing double jeopardy law concerning what constitutes the same offense for purposes of the statutory bar to prosecution.
>
> Rather, the statutory language tracts the *Blockburger* test as it expressly requires an identity of law (between the violation of 'this chapter' and the federal law or that of another state) as well as an identity of fact (the 'same act'). Moreover, the fact that a primary purpose of the Controlled Substances and Narcotics Act is to achieve uniformity, while providing an interlocking trellis of drug laws among the state and federal jurisdictions, strongly supports the State's assertion that § 161.45 bars a subsequent state prosecution only when the offenses are substantially the same in fact and law. *See generally* Prefatory Note, *1970 Handbook of the National Conference of Commissioners on Uniform State Laws*, at 223. The defendant has failed to provide any authority to bolster his alternative reading of § 161.45, relying instead on an unsupported

> assertion that the legislature simply intended to broaden double jeopardy analysis in this state without explanation. We do not agree with this novel reading of the statute in question.

*Id.* The *Petty* court, then, unambiguously concluded that the words "the same act" in § 961.45 refer to a violation of Chapter 961 and clearly rejected the "novel reading" that the word "act"—in singular form—referred to a course of conduct or a criminal transaction, which forms the basis of a single violation or act. *Id.* at 361 n.13. These phrases—a course of conduct or criminal transaction—could have been included by the legislature in the five years that have followed *Petty* if it intended to extend double jeopardy analysis beyond *Blockburger.*

¶ 58.   Rather than acknowledging that the language in § 961.45 barring prosecution for "the same act" refers to a violation of chapter 961, the majority strains to adopt Petty's novel reading of "act" as encompassing the multiple facts, the course of conduct, or the criminal transaction that formed the basis of the act or violation in the present case.[3] In an attempt to buttress

---

[3] As noted above and in *Petty*, a commonsense reading of Wis. Stat. § 961.45 indicates that "the same act" refers to a single violation rather than multiple facts, a course of conduct, or a criminal transaction, which forms the basis of a violation. *State v. Petty*, 201 Wis. 2d 337, 361 n.13, 548 N.W.2d 817 (1996). Attempting to avoid this controlling reading of "the same act" and our discussion of § 961.45 in *Petty*, the majority opinion asserts that our footnote 10 "disavows the discussion in *Petty* footnote 13." Majority op. at 33. However, the defendant in *Petty* argued for the majority's reading of § 961.45 in order to have his state charge vacated. We specifically rejected his reading (and the majority's reading) of § 961.45 in footnote 13. Footnote 10, on the other hand, explained that we did not have to engage in

its reinterpretation, the majority conducts a profitless search for legislative intent, reaching back to 1932 when the National Conference of Commissioners on Uniform State Laws adopted the Uniform Narcotic Drug Act, which was the precursor to the Uniform Controlled Substances Act, upon which the Wisconsin Controlled Substances Act is based. Still lacking direct support for its novel reading of § 961.45, the majority cites "national double jeopardy discourse ongoing when the UNDA was created and persisting up to and beyond the passage of the UCSA." Majority op. at ¶ 30. Such discourse does not provide justification to overrule a five-year-old unanimous opinion of this court.

¶ 59.   Instead, I find our construction of § 961.45 in *Petty*, bolstered by the Wisconsin Legislature's inaction since *Petty* was decided, more compelling than whatever may be gleaned from the vague "discourse ongoing when the UNDA was created" in 1932. The legislature had an opportunity to make any desired policy changes when it adopted § 961.45 in 1997, after *Petty* was decided. The legislature's refusal to make any changes in § 961.45 evidences acquiescence to our

"the same act" or *Blockburger* test because we had determined that the federal prosecution had not followed the state prosecution, which is a necessary prerequisite for the § 961.45 bar to prosecution. While footnote 10 stopped short of applying the *Blockburger* test as established in response to Petty's argument, it does not "disavow" or cast doubt on footnote 13. It may be that the majority disagrees with the *Blockburger* test, but it is well-settled law in Wisconsin. *See State v. Moffett*, 2000 WI 130, ¶ 16, 239 Wis. 2d 629, 619 N.W.2d 918 (employing the *Blockburger* test to determine if the offenses are identical). In light of the unequivocal statutory analysis in footnote 13, I believe § 961.45 tracks the *Blockburger* test and should be followed.

previous interpretation of the statute.[4] *State v. Johnson*, 207 Wis. 2d 239, 248, 558 N.W.2d 375 (1997) (concluding that legislature has acquiesced to this court's interpretation of a statute). The legislature not only had the opportunity, but it had examples from other jurisdictions if it intended to broaden Wis. Stat. § 161.45 beyond *Blockburger*.[5] Accordingly, the major-

[4] The majority seems to suggest that the legislature was not cognizant of our holding in *Petty* regarding § 961.45 because part of our discussion was in a lengthy footnote rather than in the body of the opinion. Majority op. at ¶ 38. The majority fails to cite—and I am unaware of any authority—that supports the majority's intimation that the legislature refuses to read footnotes in legal opinions. For a discussion of the role of footnotes in judicial opinions and their precedential effect, see Robert A. James, *Are Footnotes in Opinions Given Full Precedential Effect?*, 2 Green Bag 2d 267 (1999); Thomas R. Haggard, *In Defense of the Lowly Footnote*, 10-APR S.C. Law. 12 (1999); Judge Edward R. Becker, *In Praise of Footnotes*, 167 F.R.D. 283 (1996); Herma Hill Kay, *In Defense of Footnotes*, 32 Ariz. L. Rev. 419 (1990). For a deconstructive discussion of the footnote in general coupled with an analysis of Justice Harlan Fiske Stone's footnote 4 in *United States v. Carolene Prods. Co.*, 304 U.S. 144 (1938), one of the most significant footnotes in the history of constitutional law, see J.M. Balkin, *The Footnote*, 83 Nw. U. L. Rev. 275 (1989). After reviewing this discussion, in my view, there is no valid or widely accepted basis to disregard footnotes in judicial opinions.

[5] Wisconsin Stat. § 961.45 bars prosecution for "a conviction or acquittal under federal law or the law of another state for the same act." As noted, the legislature could have added course of conduct or criminal transaction after the singular "act" to broaden the double jeopardy analysis beyond *Blockburger v. United States*, 284 U.S. 299 (1932) in the five years following our *Petty* decision, but evidently declined to do so. This "criminal transaction" language is the distinguishing feature of a New York statute that goes beyond § 961.45 and the Court of Appeals

ity's decision to extend § 961.45 is for the legislature, not this court. By extending § 961.45 beyond the well-settled *Blockburger* analysis, absent a special justification, the majority has engaged in judicial lawmaking.

### III

¶ 60. In sum, I would rule that our decision in *Petty* controls and that the subsequent inaction by the legislature in declining to alter the language of § 961.45 evidences a legislative intent to keep § 961.45 in line with the well-settled *Blockburger* test. I am disturbed by the majority's willingness to jettison *Petty*, without engaging in an appropriate analysis and without sufficient justification, while simultaneously conceding that our earlier reading of § 961.45 in *Petty* is reasonable. Majority op. at ¶ 15. The majority's disregard for our precedent casts a long shadow over our past decisions while providing spongy ground for our future decisions.[6] Therefore, rather than repudiating

of New York interpreted the "criminal transaction" language after "the same act" to bar prosecution for the same conduct. *People v. Abbamonte*, 371 N.E.2d 485, 488–89 (N.Y. 1977). Similarly, Pennsylvania has "based on the same conduct" instead of "the same act" in a comparable statute and courts there have interpreted the word "conduct" as barring prosecution by dual sovereigns where there is one criminal transaction. *Commonwealth v. Abbott*, 466 A.2d 644, 652 (Pa. Super. Ct. 1983). The only other state that has confronted a statute that tracks § 961.45 is New Jersey, which has interpreted the "same act" language as referring to acts prohibited in the preceding statutory sections, in accord with our *Petty* decision. *State v. Ableman*, 342 A.2d 228, 230 (N.J. Super. Ct. App. Div. 1975); *State v. Krell*, 311 A.2d 399 (N.J. Super. Ct. Law Div. 1973).

[6] The concurrence contends that "[i]t is improper to erect the high bar of stare decisis until one has successfully cleared the high bar of showing that *Petty* note 13 is a judicial precedent

our controlling precedent, I would answer this certified question under our recent *Petty* decision.

¶ 61. I am authorized to state that Justice N. PATRICK CROOKS joins this dissent.

in the first instance." Concurrence at ¶ 48. However, assuming that footnote 13 in *Petty* was unnecessary to disposition of the case, we nevertheless have stated that "when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *Chase v. American Cartage Co.*, 176 Wis. 235, 238, 186 N.W. 598 (1922) (cited with approval in *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981)). In *Petty*, footnote 13 was clearly germane to the controversy as to whether § 961.45 barred the defendant's state prosecution. Moreover, the parties argued whether § 961.45 tracked *Blockburger* or extended beyond *Blockburger* to this court. Accordingly, we resolved that very issue properly presented to this court in footnote 13. I would therefore recognize footnote 13 as a binding interpretation of § 961.45.