STATE of Wisconsin, Plaintiff-Respondent,

v.

Alfredo RAMIREZ, Defendant-Appellant.†

Court of Appeals

No. 00–2605–CR. *Submitted on briefs May 11, 2001.—Decided June 13, 2001.*

## 2001 WI App 158

(Also reported in 633 N.W.2d 656.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Elizabeth Cavendish-Sosinski* of Pewaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM J. Alfredo Ramirez appeals from a judgment of conviction for misappropriating the personal identifying information of another pursuant to WIS. STAT. § 943.201(2) (1999–2000).[2] This offense is sometimes referred to as theft of identity. Ramirez contends that the statute as applied in this case represents an ex post facto law in violation of article I, section 12 of the Wisconsin Constitution. Like the trial court, we hold that the statute creates a "continuing offense" under *Toussie v. United States*, 397 U.S. 112 (1970), and *John v. State*, 96 Wis. 2d 183, 291 N.W.2d 502 (1980). Therefore, the application of the statute did not violate Ramirez's ex post facto constitutional protection.

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version.

## *FACTS AND PROCEDURAL HISTORY*

¶ 2. The facts are brief and undisputed. At all times relevant to this case, Ramirez was an illegal resident of the United States and did not have a social security number. On September 2, 1997, Ramirez obtained employment at Trek Bike in Walworth county. On June 4, 1999, a human resources manager at Trek Bike reported to the police that a list of people with corresponding social security numbers had been discovered in the desk of a former employee who had been fired. One of the social security numbers was listed to a Jose Ramirez. A check with the social security administration revealed that this social security number was actually assigned to Benjamin Wulfenstein of Elko, Nevada. In an interview with the police, Ramirez stated that Jose Ramirez was his cousin and that Jose had sent him the social security card two years earlier. Ramirez admitted that he had used Wulfenstein's social security number when he applied for employment at Trek Bike. Trek Bike terminated Ramirez on July 6, 1999.

¶ 3. Based on this information, the State charged Ramirez with intentionally misappropriating the personal identifying information of an individual to obtain a thing of value without the individual's consent pursuant to Wis. Stat. § 943.201(2).[3] The complaint and information alleged that the offense occurred between

---

[3] Wisconsin Stat. § 943.201(2) reads as follows:

Whoever intentionally uses or attempts to use any personal identifying information or personal identification document of an individual to obtain credit, money, goods, services or anything else of value without the authorization or consent of the individual and by representing that he or she is the individual or is acting with the authorization or consent of the individual is guilty of a Class D felony.

the dates of Ramirez's employment, September 2, 1997 to July 6, 1999.

¶ 4. Relying on the fact that WIS. STAT. § 943.201(2) did not become effective until April 27, 1998, after the date he obtained employment at Trek Bike, Ramirez moved to dismiss the information. The State responded with an amended information that alleged the effective date of the statute as the commencing date of the offense. The termination date of the offense remained the same as in the original information—July 6, 1999. After hearing the arguments of counsel, the trial court ruled that the offense was a "continuing charge, and every Friday when the checks were cut, he got money; and it was upon his representation that he . . . possessed lawfully this Social Security Number." The court denied Ramirez's motion to dismiss. Ramirez then pled guilty and he takes this appeal.[4]

---

[4] We could invoke the guilty plea/waiver rule against Ramirez since he pled guilty to the charge after the trial court rejected his constitutional challenge. *See State v. Schroeder*, 224 Wis. 2d 706, 711, 593 N.W.2d 76 (Ct. App. 1999). However, the guilty plea/waiver rule is one of judicial administration, not one of the court's power to act. *See State v. Riekkoff*, 112 Wis. 2d 119, 124, 332 N.W.2d 744 (1983). In prior cases, the supreme court has chosen not to invoke waiver where the defendant has entered a guilty plea but presented a constitutional challenge. *See Flores v. State*, 69 Wis. 2d 509, 510, 230 N.W.2d 637 (1975); *Mack v. State*, 93 Wis. 2d 287, 296–97, 286 N.W.2d 563 (1980). This is especially so where there are no factual questions presented, the parties have fully briefed the issue and the matter is of statewide importance. *Mack*, 93 Wis. 2d at 296–97.

Those considerations prompt us to not invoke the guilty plea/waiver rule in this case. Not only have the parties fully briefed the issue on appeal, but they also litigated the issue in the trial court. In addition, the question of whether WIS. STAT.

## DISCUSSION

■

¶ 5. Ramirez contends that WIS. STAT. § 943.201(2), as applied against him in this case, is an ex post facto law contrary to article I, section 12 of the Wisconsin Constitution.[5] An ex post facto law includes "any law which was passed after the commission of the offense for which the party is being tried." *State v. Thiel*, 188 Wis. 2d 695, 701, 524 N.W.2d 641 (1994) (citation omitted).[6]

¶ 6. Ramirez raises two closely related ex post facto arguments. First, he contends that even if WIS. STAT. § 943.201(2) creates a continuing offense, the only thing of value that he obtained as a result of his unauthorized use of Wulfenstein's social security number was the opportunity of employment with Trek Bike. Since this event occurred before the effective date of the statute, Ramirez argues that the application of the statute represents an ex post facto law. If we reject this argument and conclude that Ramirez obtained something of value after the effective date of the statute, Ramirez argues that his conduct still was not criminal since § 943.201(2) does not create a continuing offense.

§ 943.201(2) is a continuing offense is one of first impression and is of statewide importance.

[5] Article I, section 12 of the Wisconsin Constitution states, "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed, and no conviction shall work corruption of blood or forfeiture of estate."

[6] An ex post facto law also includes a law which "inflicts a greater punishment than the law annexed to the crime at the time it was committed . . . or which alters the situation of the accused to his disadvantage." *State v. Thiel*, 188 Wis. 2d 695, 701, 524 N.W.2d 641 (1994) (citation omitted; emphasis omitted).

¶ 7. We first determine whether Ramirez obtained a thing of value as the result of his unauthorized use of Wulfenstein's social security number. Ramirez contends that all he obtained was a job, which he describes as "the opportunity to work." He says, "A job has no intrinsic value if it is obtained and then the employee squanders the opportunity and never begins to work. What makes a job valuable is the opportunity to work hard and earn money." We think this is far too narrow a concept of the value of Ramirez's employment at Trek Bike. True, Ramirez obtained employment at Trek Bike. But what Ramirez ultimately sought and obtained was the compensation and other economic benefits that flowed from the employment. Obviously these were things of value within the meaning of § 943.201(2). And since Ramirez obtained these things after the effective date of the statute, we hold that the statute as applied was not an ex post facto law.

¶ 8. That brings us to Ramirez's second ex post facto argument, that WIS. STAT. § 943.201(2), as applied in this case, represents an ex post facto law because the statute does not create a continuing offense. The question of whether a particular criminal offense is continuing in nature is primarily one of statutory interpretation. *John*, 96 Wis. 2d at 188 (citing *Toussie*, 397 U.S. at 125). Statutory construction presents a question of law that we review de novo. *Grosse v. Protective Life Ins. Co.*, 182 Wis. 2d 97, 105, 513 N.W.2d 592 (1994).

¶ 9. In *John*, our supreme court quoted the United States Supreme Court's decision in *Toussie* when addressing the criteria for determining whether a particular statute creates a continuing offense:

These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion *or the nature of the crime involved is such that. . .[the legislature] must assuredly have intended that it be treated as a continuing one. Toussie v. United States*, 397 U.S. at 115.

*John*, 96 Wis. 2d at 189–90 (emphasis added). The *John* court also stated, "In contrast to the instantaneous nature of most crimes, a continuing offense is one which consists of a course of conduct enduring over an extended period of time." *Id.* at 188. Citing to other jurisdictions, the court noted that the continuing offense doctrine encompassed a wide variety of criminal activity including embezzlement, conspiracy, repeated failure to file reports, theft by receiving, and the failure to make and keep records of controlled substances. *Id.* at 189.

¶ 10. WISCONSIN STAT. § 943.201(2) makes it a crime to intentionally use the personal identifying information or document of another for purposes of obtaining "credit, money, goods, services or anything else of value" without the consent of the other person and by representing that the actor is the other person or is acting with the consent or authorization of such person. This crime has four elements: (1) the defendant's intentional use of the personal identifying information or document; (2) the defendant's use of such information to obtain credit, money, goods, services, or anything else of value; (3) the defendant's use of such information without the authorization or consent of the other person; and (4) the defendant's intentional representation that he or she was the other

person or acted with such person's authorization or consent. Wis JI—Criminal 1458.

¶ 11. The first, third and fourth elements of this offense are not germane to the "continuing offense" issue in this case. Ramirez concedes that he intentionally used Wulfenstein's social security number to conceal his illegal resident status and his true identity in order to obtain employment at Trek Bike and that he did so without Wulfenstein's consent or authorization. Rather, it is the second element that lies at the heart of this case. This element requires that the defendant "obtain credit, money, goods, services or anything else of value."

██

¶ 12. While WIS. STAT. § 943.201(2) may be clear enough as to what it criminalizes, it is not so clear as to whether it creates a continuing offense. Statutory language unambiguous on its face can sometimes be rendered ambiguous by the context in which it is sought to be applied. *Roehl v. Am. Family Mut. Ins. Co.*, 222 Wis. 2d 136, 145, 585 N.W.2d 893 (Ct. App. 1998).

¶ 13. In *John*, the welfare fraud statute expressly spoke to a situation where the defendant "continues to receive assistance." *John*, 96 Wis. 2d at 190. *John* teaches that one of the considerations as to whether a statute creates a continuing offense is whether the *explicit* language of the statute compels that conclusion. *Id.* Here, WIS. STAT. § 943.201(2) does not contain any express or explicit language describing the offense as "continuous." This suggests that the statute does not create a continuing offense.

¶ 14. However, WIS. STAT. § 943.201(2) requires that as a consequence of the identity theft, the defendant must have obtained "credit, money, goods, services or anything else of value." Common sense

would advise that in most cases of identify theft, that consequence will be a recurring, not an isolated, event. This suggests that the statute creates a continuing offense.

■

¶ 15. We therefore conclude that the statute is ambiguous as to whether it creates a continuing offense. In that situation, we must ascertain the legislative intent from the language of the statute in relation to its scope, history, context, subject matter . and object intended to be accomplished. *Roehl*, 222 Wis. 2d at 142. The legislative history of WIS. STAT. § 943.201(2) does not expressly speak to the issue of whether the legislation creates a continuous offense. However, the legislative history includes an article from the Los Angeles Times concerning proposed identify theft legislation in California. The article was made a part of the legislative history file of § 943.201(2) by the author of the proposed Wisconsin legislation. This article is informative because it speaks of the ongoing harm inflicted on victims of identify theft.

> With just a few key information coordinates, a crook can start phone service in your name, open charge cards, take over your existing credit lines and change the address on hijacked accounts so statements go to a mail drop.
>
> . . . .
>
> The actual number of consumers affected and volume of loss have increased, however, as the industry surges toward $2 trillion a year in transactions. Incidents of identity fraud—the kind that leaves consumers most helpless—were reported at one major company to have risen 540% in the U.S. during the first half of 1995, and industrywide it is

> estimated to account for as much as $90 million of the $1.5 billion written off as card fraud losses, according to various industry sources.

Patric Hedlund, *Identity Crisis*, L.A. TIMES, Mar. 11, 1997.

¶ 16. This history reveals that WIS. STAT. § 943.201(2) was targeted at much more than the isolated act of misappropriating the personal identifying information of another or the initial receipt by the defendant of a thing of value as a result of the misappropriation. Rather, the legislation addressed a problem of much larger proportion with far greater consequences. Given this scope, history, context, and legislative objective of the statute, we conclude that the legislature envisioned that the theft of a person's identity would, in many instances, produce recurring episodes in which the defendant would obtain things of value as a result of the original act of identity theft. Hence, the statutory language, "to obtain credit, money, goods, services or anything else of value." We therefore conclude that the statute creates a continuing offense.

██

¶ 17. From this it follows that Ramirez's conduct in this case violated WIS. STAT. § 943.201(2) after the statute became effective. As a result of his unauthorized use of Wulfenstein's social security number, Ramirez obtained money in the form of wages from Trek Bike over the course of his employment and after the effective date of the statute. Absent Ramirez's unauthorized use of Wulfenstein's social security number, Trek Bike could not have legally hired Ramirez. *See* 8 U.S.C.A. § 1324 (West 1999). Because § 943.201(2) is a continuing offense and because Ramirez's criminal conduct occurred after the statute

became effective, the application of the statute against Ramirez did not violate the ex post facto provisions of the Wisconsin Constitution.

## CONCLUSION

¶ 18. We hold that Ramirez obtained money in the form of wages, not merely the opportunity for employment, as the result of his unauthorized use of Wulfenstein's personal identifying information. We also hold that WIS. STAT. § 943.201(2) creates a continuing offense. Since Ramirez's identity theft allowed him to obtain wages after the effective date of the statute, we hold that the application of the statute did not violate the ex post facto provisions of the Wisconsin Constitution.

*By the Court.*—Judgment affirmed.