STATE of Wisconsin, Plaintiff-Appellant,

v.

Pamela L. PETERS, Defendant-Respondent.

Supreme Court

*No. 01–3267–CR. Oral argument March 5, 2003.—Decided July 3, 2003.*

2003 WI 88

(Also reported in 665 N.W.2d 171.)

For the plaintiff-appellant the cause was argued by *Sandra L. Nowack,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-respondent there was a brief (in the court of appeals) by *Terry W. Rose* and *Rose & Rose,* Kenosha, and oral argument by *Terry W. Rose.*

¶ 1. DIANE S. SYKES, J. This case is before the court on certification from the court of appeals on a question of first-impression regarding the scope of Wisconsin's identity theft statute, Wis. Stat. § 943.201 (1999–2000).[1] Specifically, the question is whether a defendant who misappropriates another's identity and uses it during an arrest and in subsequent bail proceedings to obtain lower bail has done so "to obtain credit, money, goods, services or anything else of value" within the meaning of the identity theft statute. Wis. Stat. § 943.201(2). We answer this question yes.

¶ 2. "Bail" is statutorily defined as "monetary conditions of release." Wis. Stat. § 969.001(1). "Monetary" means "of or relating to money." *Webster's Third*

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version of the statutes.

*New International Dictionary* 1457–58 (1998). Bail can consist of cash or an unsecured appearance bond or both. Wis. Stat. §§ 969.02 and 969.03. In either case, it operates as a form of credit, securing the defendant's return to court. Accordingly, a defendant who misappropriates another's identity and uses it during an arrest and in bail proceedings to obtain lower bail has stolen that identity to obtain credit or money, or both, within the meaning of the identity theft statute. Wis. Stat. § 943.201(2).

## I. FACTS AND PROCEDURAL HISTORY

¶ 3. On September 30, 2001, the loss prevention staff at a Racine Shopko store attempted to detain Pamela Lynn Peters and her son after the two had shoplifted a videogame system. During the confrontation, Peters produced a box-cutter and attempted to escape with other stolen goods. Upon arrest, Peters falsely identified herself to police as Patricia A. Panzer, d/o/b November 25, 1955, of N898 Elmore Drive, Campbellsport, Wisconsin. Patricia Panzer is the ex-wife of Peters' husband.

¶ 4. The State charged Peters, under the falsely assumed name of Patricia A. Panzer, with armed robbery and retail theft. Peters made her initial appearance in Racine County Circuit Court on October 1, 2001. During the initial appearance, Peters continued to falsely represent herself as Patricia Panzer. The State asked for a $20,000 cash bail. Based on Peters' falsely assumed identity, Peters' attorney argued that a $1,000 cash bail was appropriate, citing Panzer's stable Campbellsport address, lack of a criminal record, lack of any history of failed court appearances, and valid driver's license.

¶ 5. The court commissioner set bail as follows: "What I'm going to do, it's going to be a combination cash and signature bond. Again, I'm going to knock down the cash portion somewhat, but maybe not as much as your client would like. The total bond is going to be $20,000. $10,000 cash, $10,000 signature bond."

¶ 6. The next day, on October 2, 2001, the circuit court, the Honorable Wayne J. Marik, held an evidentiary hearing at the State's request and made findings of fact concerning Peters' actual identity. The circuit court found that the defendant was not Patricia A. Panzer but in fact was Pamela Lynn Peters, d/o/b November 15, 1964, of 715 Main Street, Lomira, Wisconsin. The circuit court specifically found that:

> [T]he person who is appearing in court today is the wife of the ex-husband of Patricia A. Panzer who was born on November 25, 1955. Further the individual present in court on at least two prior occasions has identified herself to law enforcement authorities or in connection with court proceedings as Patricia A. Panzer.

¶ 7. The court amended the case caption to reflect Peters' true identity, and then revisited the issue of bail. The State informed the court that, unlike Panzer, Peters had a record of criminal arrests including multiple counts of theft, resisting arrest, contributing to the delinquency of a child, possession of drug paraphernalia, possession of cocaine, and criminal damage to property. Furthermore, unlike Panzer, Peters had eight outstanding warrants for her arrest. After considering the new information, the circuit court concluded that there was "a very strong inference in the court's mind that the defendant was trying to establish an identity that could be verified pursuant to which she may be released and then able to flee." Having concluded that Peters was a substantial flight risk, in part because of

the falsely assumed identity and previously unknown outstanding warrants, the court increased Peters' bail to $30,000 cash.

¶ 8. The State amended the complaint to reflect Peters' correct identifying information and added a charge of obstructing an officer. The State later filed a second amended complaint adding the charge that is at issue on this appeal, violation of the identity theft statute, Wis. Stat. § 943.201. The identity theft statute makes it a crime to intentionally misappropriate another's identity "to obtain credit, money, goods, services or anything else of value" without the other's consent. Wis. Stat. § 943.201(2).

¶ 9. The second amended complaint alleged that Peters told police she had lied about her true identity "because she had warrants outstanding in other jurisdictions." The complaint alleged that Peters had misappropriated Panzer's identity to obtain something of value, to wit "(1) not being taken into custody on warrants from other jurisdictions and (2) to obtain a lesser bond at the initial appearance in this matter."

¶ 10. Peters moved to dismiss the identity theft charge. She claimed that the complaint failed to allege one of the elements of the crime required by statute, specifically, that she had misappropriated another's identity to obtain "credit, money, goods, services or anything else of value." Wis. Stat. § 943.201(2). Peters argued that the doctrine of *ejusdem generis* as applied to the catch-all statutory phrase "anything else of value" required dismissal of the charge because bail was not like the other itemized things of value in the statute, i.e., credit, money, goods, or services. The doctrine of *ejusdem generis* is a "canon of construction that when a general word or phrase follows a list of specific persons

or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." *State v. A.S.,* 2001 WI 48, ¶ 33 n.4, 243 Wis. 2d 173, 626 N.W.2d 712 (citing *Black's Law Dictionary* 535 (7th ed. 1999)).

¶ 11. The circuit court granted Peters' motion and dismissed the charge. Applying *ejusdem generis,* the circuit court concluded that the phrase "anything else of value" in Wis. Stat. § 943.201(2) was limited to "something that is in a category of credit, money, goods, services, or having those types of characteristics having measurable value and worth in a commercial sense in the marketplace," and that "[o]btaining a more favorable bond in a criminal case does not in the court's opinion fall within that category."

¶ 12. The State appealed the dismissal of the identity theft charge. We accepted the court of appeals' certification of the case and now reverse.

## II. STANDARD OF REVIEW AND PRINCIPLES OF INTERPRETATION

██

¶ 13. This case presents a question regarding the scope and interpretation of the identity theft statute, Wis. Stat. § 943.201. Questions of statutory interpretation are reviewed de novo. *State v. Setagord,* 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997).

¶ 14. If the language of a statute is clear on its face, we need not look any further than the statutory text to determine the statute's meaning. *See Bruno v. Milwaukee County,* 2003 WI 28, ¶¶ 18–22, 260 Wis. 2d. 633, 660 N.W.2d 656. "When a statute unambiguously expresses the intent of the legislature, we apply that

meaning without resorting to extrinsic sources" of legislative intent. *State ex rel. Cramer v. Wis. Ct. App.,* 2000 WI 86, ¶ 18, 236 Wis. 2d 473, 613 N.W.2d 591. Statutory language is given its common, ordinary and accepted meaning. *Bruno,* 260 Wis. 2d 633, ¶ 20; *State v. Engler,* 80 Wis. 2d 402, 406, 259 N.W.2d 97 (1977). Rules of statutory construction are inapplicable if the language of the statute has a plain and reasonable meaning on its face. *Id.* at 406–09 (holding that canons of construction, including *ejusdem generis,* are inapplicable when the statute is clear on its face).

## III. DISCUSSION

¶ 15. Wisconsin's identity theft statute, entitled "Misappropriation of personal identifying information or personal identification documents," provides as follows:

> Whoever intentionally uses or attempts to use any personal identifying information or personal identification document of an individual *to obtain credit, money, goods, services or anything else of value* without the authorization or consent of the individual and by representing that he or she is the individual or is acting with the authorization or consent of the individual is guilty of a Class D felony.

Wis. Stat. § 943.201(2) (emphasis added).[2]

---

[2] In accordance with the truth-in-sentencing follow-up legislation, the identity theft statute was reclassified from a Class D felony to a Class H felony. *See* 2001 Wis. Act 109, § 733, effective February 1, 2003. "Personal identification document" and "personal identifying information" are defined in the statute as follows: " 'Personal identification document' " means a birth certificate or a financial transaction card, as defined in § 943.41(1)(em)." Wis. Stat. § 943.201(1)(a).

¶ 16. The circuit court applied the doctrine of *ejusdem generis* to limit the application of the identity theft statute to cases in which another's identity is misappropriated for the purpose of obtaining something having "measurable value and worth in a commercial sense in the market place." Lower bail, in the circuit court's view, did not qualify.

¶ 17. We disagree with the circuit court's restrictive reading of the identity theft statute. There is nothing in Wis. Stat. § 943.201 that explicitly limits its application to identity thefts that are carried out to obtain something that has "commercial value" or "market value." Neither does the statute implicitly contain such a limitation.

¶ 18. The identity theft statute prohibits misappropriation of another's identity "to obtain credit, money, goods, services or anything else of value." Wis.

---

"Personal identifying information" means any of the following information:

1. An individual's name.

2. An individual's address.

3. An individual's telephone number.

4. The unique identifying driver number assigned to the individual by the department of transportation under § 343.17(3)(a) 4.

5. An individual's social security number.

6. An individual's employer or place of employment.

7. An identification number assigned to an individual by his or her employer.

8. The maiden name of an individual's mother.

9. The identifying number of a depository account, as defined in § 815.18(2)(e), of an individual.

Wis. Stat. § 943.201(1)(b).

Stat. § 943.201(2). Here, Peters is alleged to have misappropriated Panzer's identity to obtain a lower bail.

¶ 19. " 'Bail' means monetary conditions of release." Wis. Stat. § 969.001. "Monetary" means "of or relating to money." *Webster's, supra,* at 1457–58. Bail can also include an unsecured appearance or "signature" bond, in addition to or in lieu of cash. Wis. Stat. § 969.02(1) (misdemeanor bail) and § 969.03(1) (felony bail). The term "bond" as used in this context means "a writing . . . by which a person binds himself to pay a certain sum . . .; also: the amount of money so guaranteed—often used with *give* ." *Webster's, supra,* at 250. Bail therefore represents either cash or the promise of cash, that is, an unsecured grant of credit. In either case, bail operates as a form of credit (secured or unsecured) for the defendant's return to court. As used in this context, bail as a form of "credit" is "the balance in a person's favor in an account." *Id.* at 532–33.

¶ 20. Accordingly, a misappropriated identity that is used to obtain a lower bail obtains: 1) a reduced cash bail; 2) a signature bond with a lower money forfeiture; or 3) both. Therefore, because bail is statutorily defined as "monetary conditions of release," and can be expressed as either cash or a bond, or both, one who misappropriates another's identity and uses it to obtain lower bail in a criminal case has done so to obtain credit or money within the meaning of the identity theft statute. Wis. Stat. § 943.201(2).

¶ 21. True, bail does not have "commercial value" or "market value" in the sense that it is not bought, sold, or traded in the marketplace. But it plainly does have monetary value, is expressed in terms of cash or a bond, and operates as a form of credit. The circuit court's imposition of a requirement of measurable commercial

or market value unduly restricted the statute's application contrary to its terms. *See Engler,* 80 Wis. 2d at 408–09 *(Ejusdem generis* cannot be applied to alter the meaning of statutory language that is clear on its face.).

¶ 22. The circuit court arrived at this interpretation of the identity theft statute by applying the *ejusdem generis* canon of construction to the catch-all phrase "or anything else of value." We have concluded, however, that bail constitutes credit, money, or both, within the meaning of the identity theft statute, because bail is statutorily defined as "monetary conditions of release," takes the form of cash, a bond or a combination of the two, and operates as a form of credit.

¶ 23. Accordingly, this case does not require us to determine the precise meaning or scope of the phrase "or anything else of value" in the identity theft statute. It is enough to note that the addition of the phrase "or anything else of value" to the itemized list of "credit, money, goods [or] services" does not *narrow* the meaning of "credit, money, goods [or] services." There is no purpose for the presence of the phrase "or anything else of value" except to expand the list of potential qualifying "things of value." But we do not need to determine the precise meaning or scope of the phrase "or anything else of value" or attempt to delineate the outer limits of the identity theft statute in order to decide this case. Because bail can be cash, a bond, or both, and operates as a form of credit, the misappropriation of another's identity to obtain lower bail meets the statute's requirement that the perpetrator misappropriate an identity to obtain credit or money. Wis. Stat. § 943.201(2).

¶ 24. Our decision here is consistent with the court of appeals' rejection of a narrow interpretation of the identity theft statute in *State v. Ramirez,* 2001 WI

485

App 158, 246 Wis. 2d 802, 633 N.W.2d 656. The defendant in *Ramirez* misappropriated a social security number and used it to obtain a job. *Ramirez*, 246 Wis. 2d 802, ¶ 2. This occurred before the enactment of Wis. Stat. § 943.201. *Id.*, ¶¶ 2, 4. The defendant, however, continued to hold the job and collect wages using the stolen social security number for more than a year after the effective date of the statute. *Id.*, ¶ 3. The court of appeals concluded that Wis. Stat. § 943.201 is "targeted at much more than the isolated act of misappropriating the personal identifying information of another or the initial receipt by the defendant of a thing of value as a result of the misappropriation." *Id.*, ¶ 16. The court concluded that because "the legislature envisioned that the theft of a person's identity would, in many instances, produce recurring episodes in which the defendant would obtain things of value as a result of the original act of identity theft," the identity theft statute "creates a continuing offense." *Id.*

¶ 25. Similarly here, we reject the narrow reading of the identity theft statute adopted by the circuit court. We conclude that the circuit court improperly restricted the scope of the identity theft statute to preclude its application to the facts present in this case. Resort to the doctrine of *ejusdem generis* to determine the scope of the statutory phrase "or anything else of value" was unnecessary here. A person who misappropriates another's identity to obtain a lower bail has misappropriated that identity to obtain credit or money within the meaning of the identity theft statute, Wis. Stat. § 943.201(2). Accordingly, we reverse the circuit court's order dismissing the identity theft charge, and remand for reinstatement of the charge and further proceedings consistent with the opinion.

*By the Court.*—The order of the Racine County Circuit Court is reversed and the cause remanded for further proceedings consistent with this opinion.

¶ 26. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring).* I agree with the majority that a defendant who misappropriates another's identity and uses it during an arrest and subsequent proceedings to obtain lower bail does so in violation of Wis. Stat. § 943.201.

I

¶ 27. I write separately to reflect yet again on this court's approach to statutory interpretation.[1] The majority opinion invokes the plain meaning rule in this case, explaining that it will not look beyond the statutory text to determine a statute's meaning if the language is clear on its face.[2] It then announces that "canons of construction . . . are inapplicable when a statute is clear"[3] and uses this "rule" as a bar to applying the ejusdem generis canon of construction in the present case.[4]

---

[1] *See State v. Byers,* 2003 WI 86, ¶¶ 45–56, 263 Wis. 2d 113, 665 N.W.2d 729 (Abrahamson, C.J., concurring); *Fox v. Catholic Knights Ins. Co.,* 2003 WI 87, ¶¶ 43–48, 263 Wis. 2d 207, 665 N.W.2d 181 (Abrahamson, C.J., concurring).

[2] Needless to say, "clarity and ambiguity are in the eyes of the beholder." *Juneau County v. Courthouse Employees Local 1312,* 221 Wis. 2d 630, 642 n.8, 585 N.W.2d 587 (1998).

[3] Majority op., ¶ 14.

[4] Majority op., ¶ 14.

487

¶ 28. How strange.[5] First, the plain meaning rule is itself a canon of construction.[6] Second, many of the other interpretive techniques employed by the majority opinion to construe Wis. Stat. § 943.201 are also canons of construction. For example, the maxim that statutory language is given its common, ordinary and accepted meaning is a canon of construction.[7] So is the rule that courts may refer to a recognized dictionary to determine the common meaning of terms,[8] and the rule that a statutory definition declaring what a term means is

[5] *See State v. Delaney,* 2003 WI 9, ¶ 38, 259 Wis. 2d 77, 658 N.W.2d 416 (Abrahamson, C.J., dissenting) ("Rules of statutory interpretation are designed to help courts discern the intent of the legislature, not to serve as blinders.").

[6] *See* Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed,* 3 Vand. L. Rev. 395, 403 (1950) ("If language is plain and unambiguous it must be given effect" is canon of construction); David L. Shapiro, *Continuity and Change in Statutory Interpretation,* 67 N.Y.U. L. Rev. 921, 927–934 (1992) (describing inclusio unius, ejusdem generis, and the plain meaning rule as linguistic canons of interpretation); *see also Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then, this first canon [of interpretation] is also the last: 'judicial inquiry is complete.' "); *CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1225 n.6 (11th Cir. 2001) (the plain meaning rule "is the largest caliber canon of them all").

[7] *Perrin v. United States,* 444 U.S. 37, 43 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

[8] *JVC Co. of America v. United States,* 234 F.3d 1348, 1352 (Fed. Cir. 2000) ("A court may rely upon its own understanding of the terms used, lexicographic and scientific authorities, dictionaries, and other reliable information" to determine the common meaning of a term.)

binding upon the court.[9] The majority opinion openly invokes all of these canons of construction despite concluding that the language is plain on its face.[10] It offers no reason why the plain meaning rule permits the use of these canons, but not use of the canon of ejusdem generis.

¶ 29. The majority opinion creates a false division between the plain meaning rule and canons of construction. Proponents of the plain meaning rule reject the use of "extrinsic aids" to construction such as legislative history, history of the enactment process, committee reports, and legislative debates,[11] when the language of a statute is "clear and unambiguous."[12] The plain meaning rule's advocates do not, however, reject the use of "intrinsic aids" that assist in discerning whether the

[9] Norman J. Singer, *Statutes and Statutory Construction* § 47:07, at 227–28 (6th ed. 2000) (citing *Nat'l City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1133 (8th Cir. 1982)).

[10] *See* majority op., ¶¶ 14, 19.

[11] *See Courthouse Employees Local 1312*, 221 Wis. 2d at 642–43 (giving examples of extrinsic aids).

[12] William N. Eskridge, Jr., *The New Textualism*, 37 U.C.L.A. L. Rev. 621, 623–24 (1989) ("[N]ew textualism posits that once the Court has ascertained a statute's plain meaning, consideration of legislative history becomes irrelevant. Legislative history should not even be consulted to confirm the apparent meaning of a statutory text. Such confirmation comes, if any is needed, from examination of the structure of the statute, interpretations given similar statutory provisions, and canons of statutory construction."); *see also* R. Randall Kelso & C. Kevin Kelso, *Use of the Plain Meaning Rule to Provide a Structure for Discovering Legislative Intent*, 33 Hastings L.J. 187 (1981) ("[M]odern debate over the [plain meaning] rule centers on the permissible use of extrinsic materials to determine legislative intent.") (reprinted in Singer, *supra* note 9, § 48A:16, at 810).

language of a statute is plain on its face, such as other statutes, statutory definitions, and dictionaries.

¶ 30. "Intrinsic aids" to construction, including rules of grammar and generalizations about customary habits in the use of language, are essential to any application of the plain meaning rule.[13] "Even when a judge claims not to be construing a statute, he [or she] can not help using what he [or she] has learned about customary language usage and common understanding associated with the relevant text."[14] The rules that words should be given their plain and ordinary meaning and that courts may resort to a dictionary to ascertain the meaning of words are simply generalizations about customary habits in the use of language that are part and parcel of the process of interpreting the meaning of a statute's text.

¶ 31. Similarly, ejusdem generis is simply a generalization about the use of words. Ejusdem generis is

---

[13] *Conn. Nat'l Bank,* 503 U.S. at 253 ("Canons of construction are no more than rules of thumb that help courts determine the meaning of legislation."); *CBS Inc.,* 245 F.3d at 1225:

One benefit of applying canons of construction, rather than considering legislative history, is that their application does not require resort to extrinsic material. Instead, the canons of construction focus on the text actually approved by Congress and made a part of our country's laws. As the Supreme Court's recent opinion in [*Circuit City Stores Inc. v. Adams,* 532 U.S. 105 (2001)] confirms, where the meaning of a statute is discernible in light of canons of construction, we should not resort to legislative history or other extrinsic evidence. Canons of construction are essentially tools which help us to determine whether the meaning of a statutory provision is sufficiently plain, in light of the text of the statute as a whole, to avoid the need to consider extrinsic evidence of Congress' intent.

*See also* Singer, *supra* note 9, § 47:01, at 209–11.

[14] Singer, *supra* note 9, § 46.02, at 133.

Latin for "of the same kind," and means that when general words follow specific words in a statutory enumeration, the general words are construed to embrace objects similar in nature to those objects enumerated by the preceding specific words.[15] For example, ejusdem generis might suggest that the phrase "any other games" in a statute encompassing "baseball, basketball, football, and any other games" would be limited to team sports (like soccer) and not include "games" like chess or video games. An enumeration followed by a "catch all" phrase is a common drafting technique that saves a legislature from having to spell out every contingency in advance.[16]

¶ 32. Ejusdem generis is not always an appropriate canon of construction, even when a statute includes a list of specific words followed by general words in an enumeration.[17] The applicability of this canon must be resolved as part of a court's effort to determine the meaning of a statute's text. The canon is an "intrinsic aid" that is germane to a textualist approach to statutory interpretation; that is, it is both compatible with and necessary to the plain meaning rule, just like the other canons the majority opinion relies on in the present case.[18]

---

[15] *See Circuit City,* 532 U.S. at 114–15; Singer, *supra* note 9, § 47:17, at 273–74.

[16] Singer, *supra* note 9, § 47:17, at 281–82.

[17] *Id.* § 47:18, at 287.

[18] *See Circuit City,* 532 U.S. at 114–15 ("The wording of [the statute] calls for the application of the maxim ejusdem generis"); ·*Chisom v. Roemer,* 501 U.S. 380, 404 (1991) (Scalia, J., dissenting):

I thought we had adopted a regular method for interpreting the meaning of language in a statute: first, find the ordinary meaning of the language in its textual context; and second, using estab-

¶ 33. The vast majority of cases coming to this court involve the interpretation of some writing, be it a statute, a constitution, a contract, or some other document. The consistency and coherence of our approach to interpretation is therefore vital. Litigants, lawyers, legislators, judges, and the citizens of Wisconsin deserve to know and understand how we approach interpretation.

¶ 34. As I have stated, proper statutory interpretation requires that a court take a comprehensive view toward discerning legislative intent that begins with consideration of the language of a statute and then looks to all relevant evidence of legislative intent including its scope, history, context, subject matter and purpose.[19]

## II

¶ 35. Finally, while on the topic of rules, let me turn to another rule. The majority opinion violates a basic rule of appellate decision making: courts are not to reach out and decide issues unnecessary to the case at hand. The majority opinion correctly concludes that a person is guilty of identity theft under Wis. Stat. § 943.201 when he or she misappropriates another's identity to obtain lower bail because bail falls within the statutory words "to obtain credit or money."[20] It is thus not necessary to the present case to reach out and further state in what amounts to dicta that the phrase

lished canons of construction, ask whether there is any clear indication that some permissible meaning other than the ordinary one applies. If not—and especially if a good reason for the ordinary meaning appears plain—we apply that ordinary meaning.

[19] *See Byers,* 263 Wis. 2d 113, ¶ 50, (Abrahamson, C.J., concurring).

[20] Majority op., ¶ 25.

"or anything else of value" in § 943.201 is unduly restricted if it is interpreted to include only items with measurable commercial or market value.[21] As I have written before, there is a growing tendency for this court to reach out and decide issues that are not squarely presented.[22] This tendency is, I believe, detrimental to the development of Wisconsin law.[23]

[21] *See, e.g.,* majority op., ¶ 17:

> We disagree with the circuit court's restrictive reading of the identity theft statute. There is nothing in Wis. Stat. § 943.201 that explicitly limits its application to identity thefts that are carried out to obtain something that has "commercial value" or "market value." Neither does the statute implicitly contain such a limitation.

*See also* majority op., ¶ 21 ("The circuit court's imposition of a requirement of measurable commercial or market value unduly restricted the statute's application contrary to its terms."); majority op., ¶ 25:

> Similarly here, we reject the narrow reading of the identity theft statute adopted by the circuit court. We conclude that the circuit court improperly restricted the scope of the identity theft statute to preclude its application to the facts present in this case. Resort to the doctrine of ejusdem generis to determine the scope of the statutory phrase "or anything else of value" was unnecessary here.

[22] *Town of Beloit v. County of Rock,* 2003 WI 8, ¶¶ 56, 72, 259 Wis. 2d 37, 657 N.W.2d 344 (Abrahamson, C.J., dissenting).

[23] The court has treated dicta differently depending on whether it likes the dicta. For an illustration of the difficulties the court faces when it must deal with dicta, see *State v. Petty,* 201 Wis. 2d 337, 548 N.W.2d 817 (1996), and *State v. Hansen,* 2001 WI 53, ¶ 31, 243 Wis. 2d 328, 627 N.W.2d 195.

For discussions of Wisconsin's views on dicta, *see, e.g., State v. Picotte,* 2003 WI 42, ¶¶ 60–61 n.16, 261 Wis. 2d 249, 661 N.W.2d 381 (reviewing two lines of cases on dicta); *State v. Leitner,* 2002 WI 77, ¶ 22 n.16, 253 Wis. 2d 449, 646 N.W.2d 341 (same); *State v. Sartin,* 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449

¶ 36. For the foregoing reasons, I write separately.

¶ 37. I am authorized to state that Justice WILL-IAM A. BABLITCH joins part I of this opinion and that Justice ANN WALSH BRADLEY joins part II of this opinion.

¶ 38. WILLIAM A. BABLITCH, J. *(concurring).* *"That depends on what the meaning of the word 'is' is."* William Jefferson Clinton.

¶ 39. I write only to emphasize that canons of statutory construction, such as the "plain meaning"

(1996) ("[d]icta is a statement . . . in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it"; dicta is not controlling); *State v. Koput,* 142 Wis. 2d 370, 386 n.12, 418 N.W.2d 804 (1988) (it is not inappropriate for a court to evaluate statements in Supreme Court opinions on the basis of whether they constitute dicta); *Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 602, 405 N.W.2d 327 (1987) (disapproving of discussion of reducing clause in *Radlein v. Indus. Fire & Cas. Ins. Co.,* 117 Wis. 2d 605, 345 N.W.2d 874 (1984), as dicta); *Am. Family Mut. Ins. Co. v. Shannon,* 120 Wis. 2d 560, 565, 356 N.W.2d 175 (1984) (adopting the generally accepted doctrine that "a statement not addressed to the question before the court or necessary for its decision" is dicta, and not binding on the court); *Reiter v. Dyken,* 95 Wis. 2d 461, 474, 290 N.W.2d 510 (1980) (same).

*But see Hansen,* 2001 WI 53, ¶ 60, 243 Wis. 2d 328, 627 N.W.2d 195 (Wilcox, J., dissenting) (the rule in Wisconsin is that a discussion of issues not decisive of a controversy is a binding judicial act, not dicta) (citing *State v. Kruse,* 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981)); *Kruse,* 101 Wis. 2d at 392 (quoting *Chase v. Am. Cartage,* 176 Wis. 235, 238, 186 N.W. 598 (1922)):

It is deemed the doctrine of the cases is that when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.

rule, are tools, not rules. They are all designed to reach one fundamental goal: discerning legislative intent. Ignoring relevant evidence on legislative intent in the name of "plain meaning" will necessarily at times lead to an interpretation that is completely contrary to what the legislature intended.

¶ 40. Language is inherently ambiguous—perhaps not as ambiguous as the quotation above would have us believe, but the quote makes a point: plain meaning is frequently in the eye of the beholder. What is plain to one may be ambiguous to another. If good evidence as to legislative intent is present, why not use it? Accordingly, I join Chief Justice Abrahamson's concurrence.