STATE of Wisconsin, Plaintiff-Respondent,

v.

George W. LIS, Sr., Defendant-Appellant.

Court of Appeals

*No. 2007AP2357–CR. Submitted on briefs March 19, 2008.
—Decided April 1, 2008.*

2008 WI App 82

(Also reported in 751 N.W.2d 891.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jefren E. Olsen*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Anne C. Murphy*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J.   George Lis, Sr., appeals a judgment of conviction for two counts of unauthorized use of personal identifying materials and an order denying his motion for plea withdrawal. The key question in this appeal is whether Lis's crimes continued after the fraudulent accounts he opened were closed. We conclude they did not. As a result, we reverse the judgment and remand with directions to allow Lis to withdraw his pleas.

### BACKGROUND

¶ 2.   In September 2004, Lis was charged with three counts of unauthorized use of personal identify-

ing materials in violation of WIS. STAT. § 943.201(2) (2003–04).[1] The complaint alleged Lis opened three accounts using employment information and the social security number of his son, George Lis, Jr. The complaint listed a Verizon telephone account, an Amoco credit card, and a Capital One credit card, and stated the violations occurred in 2003 and 2004. In December 2004, the State filed an Information containing the same three charges.

¶ 3.  In March 2006, Lis pled guilty to two of the counts in the Information. The third count was dismissed and read in, along with a fourth count from a different case. As part of the colloquy, the court advised Lis that each of the two counts he was pleading to carried a maximum penalty of six years in prison. The court accepted Lis's plea, and ultimately sentenced him to three years in confinement and two years on extended supervision.

¶ 4.  Lis moved to withdraw his pleas in May 2007. Lis alleged the three accounts that were the basis for the charges were closed in 1999 and 2000.[2] Because the maximum penalty changed between 2000 and 2003, Lis

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] Lis relied on documents from the preliminary hearing showing the Verizon phone was in service from July 1998 to May 1999, the Amoco account was open from April 2000 to December 2000, and the Capital One account was charged off as bad debt in January 1999. It is not clear from the complaint and Information which of the three charges corresponded to each account. As a result, it is not clear whether the accounts in both the charges Lis pled to were closed in 1999 or one of them was closed in 2000.

Lis's motion also included other claims not relevant in this appeal.

argued the court gave him incorrect information during the plea colloquy when it told him the maximum penalty he was facing was the 2003 penalty.[3] Lis argued his pleas therefore were based on incorrect information, and were not knowingly, voluntarily and intelligently entered.

¶ 5. The State did not dispute Lis's contention that the accounts were closed by the end of 2000, but argued the offenses continued into 2004 because of the continued harm to the victims. The court concluded Lis's offenses continued into 2004 because despite the account closures, interest and fees continued to accrue on the accounts, and creditors continued to look to the victim for payment. The court therefore denied Lis's plea withdrawal motion.

### DISCUSSION

■■■■

¶ 6. The meaning of a statute is a question of law reviewed without deference. *LaCount v. General Cas. Co.*, 2006 WI 14, ¶ 20, 288 Wis. 2d 358, 709 N.W.2d 418. We begin with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. That language is given its common, ordinary, and accepted meaning. *Id.* We interpret statutory language in the context in which

---

[3] In 1999, the maximum penalty for a violation of WIS. STAT. § 943.201(2) was a five-year indeterminate sentence. On December 31, 1999, with the advent of truth in sentencing, the maximum penalty increased to a ten-year determinate sentence. *See* WIS. STAT. §§ 943.201(2), 939.50(3)(d), 973.01(1) (1999–2000); 1997 Wis. Act 283 § 325. In 2003, the maximum sentence was reduced to a six-year determinate sentence. 2001 Wis. Act 109, §§ 558, 733; WIS. STAT. § 939.50(3)(h) (2003–04).

it is used, in relation to the language of surrounding or closely related statutes, and in a way that avoids absurd results. *See id.*, ¶ 46. We also consider the purpose of the statute so far as its purpose is shown in the text and structure of the statute itself. *Id.*, ¶ 48. If this analysis does not result in an unambiguous meaning, we also consult extrinsic sources, such as legislative history. *Id.*, ¶ 50.

¶ 7.   As relevant here, a person violates WIS. STAT. § 943.201(2) when he or she

> intentionally uses, attempts to use, or possesses with intent to use any personal identifying information . . . of an individual . . . (a) To obtain credit, money, goods, services, employment, or any other thing of value or benefit.

A violation of the statute is a continuing offense. *State v. Ramirez*, 2001 WI App 158, ¶ 16, 246 Wis. 2d 802, 633 N.W.2d 656. A continuing offense is a course of conduct that takes place over time, as opposed to a single incident, and is complete when the defendant performs the last act that, viewed alone, is a crime. *John v. State*, 96 Wis. 2d 183, 188, 291 N.W.2d 502 (1980). So, for example, in a welfare fraud case, the final act is the last receipt of welfare benefits. *Id.* at 191. In the identity theft context, a person who uses another's identity to secure employment commits a continuing violation of § 943.201(2) so long as the person receives wages or other benefits from the employment. *See Ramirez*, 246 Wis. 2d 802, ¶ 17.

¶ 8.   In this case, Lis's offense continued into 2003 and 2004 only if he received a "thing of value or benefit" after the accounts were closed in 2000. A "benefit" is

"something that guards, aids, or promotes well-being: ADVANTAGE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 204 (unabr. 1993). Similarly, "valuable" means "possessing monetary value in use or exchange" or "characterized by usefulness, worth, or serviceableness." *Id.* at 2530. In this case, so long as the Verizon account was open, Lis was using his son's identity to obtain a "thing of value"—phone service. So long as the credit card accounts were open, Lis was using his son's identifying information to obtain credit. Once those accounts were closed, however, the benefits to Lis—the phone and credit—ended.

¶ 9.   The State argues Lis received a benefit because interest and fees continued to accrue after the accounts were closed, and creditors continued to attempt to collect from his son. The State points out Lis would have had to pay the fees and charges had the accounts been in his name. The State also argues Lis received a continuing benefit in the form of "the ability to avoid repayment of the debts he incurred."

¶ 10.   The State's arguments fail, for two reasons. First, the State confuses benefits with their attendant liabilities. A theft typically results in a benefit to the thief and a corresponding loss to someone else.[4] For example, in a retail theft, the thief steals an item from a store. The thief is now better off because the thief has

---

[4] A loss to another person is not an element of WIS. STAT. § 943.201(2). We recognize that identity theft can also encompass instances in which the benefit to the defendant does not create this kind of corresponding loss. For example, in *Ramirez* the information was used to obtain employment, which benefited the defendant but did not harm his employer. *See State v. Ramirez*, 2001 WI App 158, ¶ 17, 246 Wis. 2d 802, 633 N.W.2d 656. Where corresponding losses do exist, however, they are distinct from benefits.

possession of the item. The store has a corresponding loss. However, the store's loss is not an additional benefit to the thief. While the store's loss is a consequence of the thief's actions, the loss is not anything "possessing monetary value" or "characterized by usefulness, worth, or serviceableness" to the thief. *See id.* at 204, 2530. This case is no different; Lis benefited from the phone service and credit he received, and from the things he purchased using the credit. While the benefits to Lis had corresponding consequences for others, those consequences were just that—consequences. They were not benefits to Lis.

■

¶ 11.   Second, the State ignores the nature of Lis's offense. Avoiding responsibility for debts by using another person's identity is at the heart of Wis. Stat. § 943.201(2). The accounts in this case were fraudulent from the very beginning, and Lis was able to avoid responsibility for his obligations as soon as the accounts were open. It makes no sense to say avoiding repayment is a distinct, ongoing benefit separate from the original obligations. As Lis points out in his reply brief, if ongoing nonpayment was considered a separate "thing of value or benefit," Lis's crime would continue up to and even after his conviction, until the last dollar of restitution was paid. We decline to interpret § 943.201(2) in a way that will reach this absurd result. *See Kalal*, 271 Wis. 2d 633, ¶ 46. Instead, we conclude the phrase "thing of value or benefit" means the original receipt of something with value, not ongoing nonpayment of the associated liabilities.

¶ 12.   The State argues this result is contrary to *State v. Peters*, 2003 WI 88, 263 Wis. 2d 475, 665 N.W.2d 171. Peters falsely identified herself to police when arrested, and as a result obtained a lower bail amount

than would otherwise have been set. *Id.*, ¶¶ 3–4, 7. She was charged with violating WIS. STAT. § 943.201(2). *Id.*, ¶ 8. The supreme court held that "credit, money, goods, services or anything else of value" included a lower bail amount, since bail "operates as a form of credit" even though it cannot be bought or sold. *Id.*, ¶¶ 21–22. The court rejected Peters' argument that the statute was limited to instances where a defendant obtained things with commercial value or market value. *Id.*, ¶ 17.

¶ 13.   *Peters* is of limited relevance here, since the court's holding in that case was based on the definition of "credit," and the court specifically declined to define the phrase "thing of value or benefit."[5] *Id.*, ¶ 23. Peters obtained a tangible benefit for herself—a lower bond. Nothing in *Peters* suggested that a "thing of value or benefit" could include ongoing nonpayment of fraudulent charges, or that it could include an action by a creditor resulting in no change in the defendant's position.

¶ 14.   While the plain language of WIS. STAT. § 943.201(2) resolves the parties' dispute, we note that our result is also consistent with legislative history. *See Kalal*, 271 Wis. 2d 633, ¶¶ 50–51. In *Ramirez*, we relied on a news article made a part of the legislative history of § 943.201(2) by the author of the legislation. *Ramirez*, 246 Wis. 2d 802, ¶ 15. The article describes a typical identity theft scenario:   "With just a few key information coordinates, a crook can start phone service in your name, open charge cards, take over your existing credit lines and change the address on hijacked

---

[5] The court in *Peters* interpreted the 1999–2000 statutes, which used the phrase "anything else of value" instead of "thing of value or benefit." *State v. Peters*, 2003 WI 88, ¶ 1 n.1, ¶ 23, 263 Wis. 2d 475, 665 N.W.2d 171; *see also* WIS. STAT. § 943.201(2) (1999–2000).

accounts so statements go to a mail drop." *Id.* (citation omitted). We noted that "the legislature envisioned that the theft of a person's identity would, in many instances, produce recurring episodes in which the defendant would obtain things of value as a result of the original act of identity theft." *Id.*, ¶ 16.

¶ 15. As the example cited in *Ramirez* illustrates, an identity theft typically involves an initial theft of information, followed by continued use of the information in a variety of ways. It is these two actions—theft and unauthorized use of information—that WIS. STAT. § 943.201(2) was intended to criminalize. While the theft and unauthorized use will likely have ongoing consequences for the victim—and result in ongoing nonpayment of debts incurred—the crime itself consists of the initial theft and the use of the information, not those ongoing consequences.

¶ 16. The State concedes that if Lis's crime ended by the end of 2000, he was misinformed on the applicable penalty and is entitled to withdraw his guilty pleas. *See State v. Harden*, 2005 WI App 252, ¶ 4, 287 Wis. 2d 871, 707 N.W.2d 173 (plea is not knowingly or voluntarily entered when it is made without knowledge of the penalties the court could impose); *see also State v. Alexander*, 2005 WI App 231, ¶ 15, 287 Wis. 2d 645, 706 N.W.2d 191 (arguments not refuted are deemed admitted). Accordingly, on remand the court shall allow Lis to withdraw his pleas.

*By the Court.*—Judgment and order reversed and cause remanded with directions.