**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 27, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP742-CR**

Cir. Ct. No. **2016CF482**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

LISA RENA LANTZ,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: JOHN ZAKOWSKI, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    HRUZ, J. Lisa Lantz appeals a judgment convicting her of one count of conspiring to deliver methamphetamine, two counts of soliciting the delivery of methamphetamine, and one count of maintaining a drug trafficking place. Lantz argues that her two convictions for soliciting the delivery of

methamphetamine are multiplicitous of her conviction for conspiring to deliver methamphetamine, in violation of her due process rights. Lantz further contends she has not waived her multiplicity claim, but if she has, she argues that her trial counsel was ineffective for failing to raise a multiplicity argument. Lantz also argues the circuit court erroneously exercised its discretion by imposing an aggregate twenty-seven year sentence because the court disregarded mitigating factors and erroneously believed that Lantz could not remain drug free. Lantz requests that we reverse and remand her case to the circuit court with instructions to vacate her solicitation convictions, dismiss the solicitation charges, and resentence her on the remaining charges.

¶2 We conclude that conspiring to deliver methamphetamine and soliciting the delivery of methamphetamine are different in law and in fact. We therefore presume that the legislature authorized cumulative punishments for these offenses and determine that Lantz has not overcome her burden of rebutting this presumption. Because Lantz's solicitation and conspiracy convictions are not multiplicitous, her counsel was not ineffective. Finally, we further conclude that the circuit court did not erroneously exercise its discretion when sentencing Lantz to a total of twenty-seven years in the Wisconsin prison system. Accordingly, we affirm.

## BACKGROUND

¶3 According to the complaint, Lantz was a midlevel methamphetamine distributor for a large drug trafficking organization in Brown County. Narcotics investigators discovered Lantz's involvement in the organization while investigating a suspected member of the organization, Bill Yang. Investigators obtained court-authorized wiretaps of Yang's phone, observed his movements, and

2

obtained statements from "sellers, customers and witnesses." During the investigation, Yang and Lantz interacted on numerous occasions, including by text, phone, and in-person meetings. Investigators learned that Lantz distributed methamphetamine to support her own use of that substance.

¶4 Lantz eventually pled no contest to four charges: one count of conspiring to deliver over fifty grams of methamphetamine; two counts of soliciting the delivery of between three and ten grams of methamphetamine; and one count of maintaining a drug trafficking place. During the plea hearing, Lantz agreed that the complaint could serve as the factual basis for her pleas. As relevant to the conspiracy charge, the State alleged that Lantz conspired to deliver more than fifty grams of methamphetamine between September 1, 2015, and March 22, 2016. An informant close to Lantz told law enforcement that Lantz and her husband received roughly one to four ounces of methamphetamine per week from Yang, which Lantz and her husband then resold. In an interview with law enforcement, Lantz admitted that she purchased roughly 3.6 to 7.2 grams of methamphetamine approximately three to four times a week. Lantz stated that she made these purchases for about eleven weeks between January 2, 2016, and March 19, 2016. Lantz stated that she purchased roughly half of the methamphetamine for use by other people.

¶5 As relevant to the solicitation charges, the State alleged that on two separate occasions—February 27, 2016, and March 13, 2016—Lantz solicited another person to deliver to her between three and ten grams of methamphetamine. On February 27, 2016, Lantz texted Yang, asking if he was "coming over" because her "people [were] waiting on [her]" and one person was "coming with the [money]." A narcotics investigator observed Yang arrive at Lantz's residence shortly thereafter and leave several minutes later. Again, on March 13, 2016,

3

Lantz texted Yang, asking him to stop by her residence because she had all of Yang's money and she "need[ed] the same & ½ of it is gone." Yang agreed to go to Lantz's residence, and a narcotics investigator observed Yang arrive there a short time later. A narcotics investigator opined in the complaint that both of these encounters between Lantz and Yang involved methamphetamine transactions.

¶6      The circuit court sentenced Lantz following her no-contest pleas and the completion of a presentence investigation report (PSI). The State recommended that Lantz receive a total of sixteen years' imprisonment, consisting of eight years' initial confinement and eight years' extended supervision. Conversely, the PSI author recommended that Lantz be placed on probation and that her sentences be withheld. Lantz agreed with the PSI's recommendation. Despite the PSI author's and Lantz's recommendations, the court viewed Lantz's case as a "significant prison case." The court recognized that "there's a lot of good in [Lantz]"; that she had helped veterans; and that she was smart. Still, the court expressed great concern about the people buying methamphetamine from Lantz and how their lives might be ruined. Ultimately, the court imposed consecutive sentences totaling twenty-seven years in the Wisconsin prison system consisting of nine and one-half years' initial confinement and seventeen and one-half years' extended supervision.

¶7      Lantz filed a postconviction motion seeking an order vacating her solicitation convictions and granting her resentencing. Lantz argued that "[i]t was unconstitutional for [her] to be punished for conspiring to deliver a large amount of methamphetamine over a six-month period, while also being punished for soliciting deliveries directly related to the same conspiracy on specific dates within the same six-month period." Lantz contended that her solicitation

4

convictions were multiplicitous of her conspiracy conviction and must be vacated because "the legislature did not authorize cumulative punishments in [her] case." Lantz also argued that she did not waive her multiplicity challenge by pleading no contest, but if she did, she contended that her trial counsel was ineffective for failing to raise a multiplicity argument. Finally, Lantz asserted that she should be resentenced because the circuit court disregarded mitigating factors about her background and erroneously stated that she was not able to remain drug free.

¶8 Following a *Machner* hearing,[1] the circuit court issued a written decision denying Lantz's postconviction motion. The court concluded that Lantz's solicitation convictions were not multiplicitous of her conspiracy conviction because the convictions were different in fact and in law, and because the legislature intended to allow multiple punishments. Accordingly, the court determined that "[t]he [S]tate had the authority to issue the charges" and the court had "the authority to issue separate sentences," and therefore Lantz's trial counsel was not ineffective for failing to raise a multiplicity argument. The court also concluded that it "did not ignore [Lantz's] amenability to rehabilitation" during sentencing, and that it considered mitigating factors regarding Lantz's background and personal history. Lantz now appeals. Additional facts are provided below.

## DISCUSSION

*I. Lantz's punishments were not multiplicitous*

¶9 "The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and its parallel provision in the Wisconsin Constitution,

---

[1] *See **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).*

Article I, Section 8(1), prohibit multiple punishments for the same offense." *State v. Ziegler*, 2012 WI 73, ¶59, 342 Wis. 2d 256, 816 N.W.2d 238. When a defendant is charged in more than one count for a single offense proscribed by statute, the counts are impermissibly multiplicitous. *Id.* Whether a multiplicity violation exists in a given case is a question of law subject to our independent review. *State v. Multaler*, 2002 WI 35, ¶52, 252 Wis. 2d 54, 643 N.W.2d 437.

¶10 We review multiplicity claims according to a well-established, two-pronged methodology. *Ziegler*, 342 Wis. 2d 256, ¶60. We must first determine whether the offenses are identical in law and in fact by applying the "elements-only" test. *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). The outcome of the "elements-only" test then determines what presumption we apply under the second prong of our multiplicity analysis. *State v. Patterson*, 2010 WI 130, ¶15, 329 Wis. 2d 599, 790 N.W.2d 909. If the offenses are identical in law and in fact, we presume that the legislature did not intend to permit multiple punishments. *State v. Brantner*, 2020 WI 21, ¶25, 390 Wis. 2d 494, 939 N.W.2d 546. The State may rebut that presumption only by a clear indication of contrary legislative intent. *Ziegler*, 342 Wis. 2d 256, ¶61. If, however, the offenses are different in law or in fact, "we are no longer concerned with a double jeopardy violation but instead a potential due process violation." *Id.*, ¶62. Under those circumstances, we presume that the legislature intended to permit multiple punishments. *Patterson*, 329 Wis. 2d 599, ¶15. The defendant then has the burden of demonstrating a clear legislative intent against cumulative punishments. *State v. Davison*, 2003 WI 89, ¶45, 263 Wis. 2d 145, 666 N.W.2d 1. Once we determine what presumption to apply, we proceed to the second prong of the multiplicity analysis to discern legislative intent. *Patterson*, 329 Wis. 2d 599, ¶16.

¶11 Lantz concedes, and we agree, that her solicitation and conspiracy convictions are different in law. Two offenses are identical in law under the "elements-only" test "if one offense does not require proof of any fact in addition to those which must be proved for the other offense." *Ziegler*, 342 Wis. 2d 256, ¶60. Conspiracy requires proof of three elements: (1) intent by the defendant that the crime be committed; (2) an agreement between the defendant and at least one other person to commit the crime; and (3) an act performed by one of the conspirators in furtherance of the conspiracy. *State v. Peralta*, 2011 WI App 81, ¶18, 334 Wis. 2d 159, 800 N.W.2d 512; WIS JI—CRIMINAL 570; *see also* WIS. STAT. §§ 939.31 and 961.41(1x) (2019-20).[2] Solicitation, on the other hand, requires proof of two elements: (1) the defendant intended that a particular felony be committed; and (2) the defendant advised another person, by the use of words or other expressions, to commit that felony and did so under circumstances that indicate, unequivocally, that the defendant intended that the felony be committed. *See State v. Kloss*, 2019 WI App 13, ¶7, 386 Wis. 2d 314, 925 N.W.2d 563 (citing WIS JI—CRIMINAL 550); *see also* WIS. STAT. § 939.30(1).

¶12 Solicitation and conspiracy are not identical in law. *Compare* WIS. STAT. § 939.31 *with* WIS. STAT. § 939.30(1). In the context of this case, both offenses required proof that Lantz intended that the crime of delivering methamphetamine be committed. Conspiracy, however, required proof that Lantz *agreed* with at least one other person to deliver methamphetamine, whereas solicitation required proof that Lantz *advised* another person to deliver methamphetamine. Conspiracy also requires that one of the conspirators commit

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

an act in furtherance of the conspiracy, while a solicitation offense is complete without further actions by anyone beyond those actions satisfying the two elements listed above. Therefore, we conclude that Lantz's convictions are not identical in law.

¶13 We also conclude that Lantz's convictions are different in fact.[3] To determine whether offenses are different in fact, we must consider whether the charged acts are "separated in time or are of a significantly different nature." *Multaler*, 252 Wis. 2d 54, ¶56 (citation omitted). Acts are separated in time when "sufficient time for reflection [existed] between the acts such that the defendant re-committed himself [or herself] to the criminal conduct." *Id.* Likewise, whether acts are significantly different in nature is not limited to a straightforward determination of whether the acts are of different types. *Id.*, ¶57. Offenses are also significantly different in nature if each requires "a new volitional departure in the defendant's course of conduct." *Id.* (citation omitted).

¶14 Lantz argues that a conspiracy conviction involving multiple offenses encompasses all acts that are the same in time and in nature. Lantz further contends that her solicitation convictions are the same in time because they occurred during the same time period as the acts underlying her conspiracy conviction. Lantz also contends that her acts were a part of a "single intent and design" under WIS. STAT. § 971.365(1) and, therefore, were the same in nature.

---

[3] Although we may presume that the legislature intended to permit cumulative punishments because Lantz's offenses are different in law, we also address whether the offenses are different in fact because both parties make subtle arguments regarding this issue when discussing legislative intent.

¶15    We reject these arguments. The specific acts underlying Lantz's solicitation convictions differ in time from the acts underlying her conspiracy conviction. Lantz admitted to purchasing roughly 3.6 to 7.2 grams of methamphetamine three to four times a week, beginning around January 2, 2016. Thus, by the time Lantz solicited the delivery of methamphetamine on February 27, 2016, and March 13, 2016—both over eight weeks after the conspiracy began—she had "sufficient time for reflection" after purchasing and selling methamphetamine, such that she recommitted herself to the criminal conduct when she later solicited the delivery of methamphetamine. The fact that Lantz conspired over an eleven-week period does not mean that her acts were the same in time. Such an approach fails to consider the distinction between acts and offenses, and it focuses on the overall timing of the offenses rather than focusing on when the acts underlying each offense occurred. Here, we conclude Lantz had sufficient time for reflection between her actions underlying the conspiracy conviction and her actions underlying her solicitation convictions.

¶16    Lantz's actions underlying her solicitation convictions also differ in nature from her actions underlying her conspiracy conviction. Lantz's solicitations constituted a "new volitional departure" because Lantz made deliberate decisions to obtain additional methamphetamine and to advise Yang to deliver such methamphetamine to her. Thus, her solicitations involved new and additional decisions beyond her decisions already made during the preexisting conspiracy. In sum, Lantz's convictions differed in fact because her convictions differed in time and in nature. Because Lantz's convictions are not identical in law or in fact, we presume that the legislature intended to permit multiple punishments, and Lantz carries the burden of rebutting our presumption. *See Ziegler*, 342 Wis. 2d 256, ¶62.

¶17 With our presumption in place, we now determine whether the legislature intended to authorize cumulative punishments in cases such as Lantz's. To discern legislative intent under the second prong of our analysis, we analyze the following four factors: "(1) all applicable statutory language; (2) the legislative history and context of the statutes; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishments for the conduct." *Id.*, ¶63. Lantz contends that she can meet her burden and prevail on her multiplicity claim because each factor shows that the legislature did not intend cumulative punishments for her conspiracy and solicitation crimes.

¶18 Lantz argues that the "applicable statutory language" shows that the legislature "sought to bar punishing the same acts or conduct relating to controlled substance violations twice." As the State correctly points out, however, Lantz does not discuss the applicable statutory language for conspiracy or solicitation. Instead, Lantz begins her analysis with WIS. STAT. § 971.365, a procedural provision for crimes involving certain controlled substances. Lantz contends that § 971.365 "illustrates the legislature's will to allow prosecutors to punish individuals for larger schemes," and she says that this statute allowed the State to aggregate her smaller methamphetamine transactions into a single conspiracy charge involving fifty or more grams of methamphetamine. Lantz further argues that § 971.365(2) prohibits the State from charging a person who was either convicted or acquitted of conduct presented in an earlier trial related to controlled substance crimes. Lantz suggests that subsec. (2) is indicative of the legislature's will against multiple punishments related to all controlled substance violations.

¶19 At the outset, we reject any notion that Lantz's conspiracy conviction necessarily aggregated all of her smaller methamphetamine transactions into one charge, under WIS. STAT. § 971.365(1). Conspiracy only

requires that an act be performed by one of the conspirators in furtherance of the conspiracy. *Peralta*, 334 Wis. 2d 159, ¶18. Therefore, Lantz's conspiracy conviction only required proof of a single act in furtherance of the conspiracy to deliver fifty or more grams of methamphetamine. Her conspiracy conviction did not require proof of each individual delivery or transaction that added up to fifty grams. Although each smaller transaction is evidence of Lantz's intent and agreement to deliver fifty or more grams of methamphetamine, each transaction need not be aggregated under § 971.365(1) to prove the conspiracy.

¶20 Moreover, even if the State were required to prove the aggregate amount of each methamphetamine delivery, the State did not need to include the amounts involved in the solicitation convictions in order to exceed the fifty-gram threshold. Lantz admitted to purchasing roughly 3.6 to 7.8 grams of methamphetamine three to four times a week over an eleven-week period. Following Lantz's lowest estimates, she would have purchased over 115 grams of methamphetamine during the eleven-week period. Thus, even if we did not consider the amounts involved in the solicitation charges (which was at most twenty grams), Lantz's conduct brought her well over the fifty-gram threshold.[4]

---

[4] Although the parties seem to assume that Lantz's conspiracy conviction was based on the acts of Yang delivering methamphetamine to Lantz, these are not the only acts that could form the basis for the conspiracy charge. The undisputed facts also support a conclusion that Lantz and Yang conspired to deliver methamphetamine to other people. It is undisputed that Yang delivered over 115 grams of methamphetamine to Lantz during an eleven-week period. Lantz also admitted to law enforcement that she purchased about half of the methamphetamine to sell to other people. Lantz's conversations with Yang also indicate that both Lantz and Yang understood that Lantz was selling methamphetamine to other people.

(continued)

11

¶21 With that said, we are also unconvinced that WIS. STAT. § 971.365 indicates a legislative intent against cumulative punishments for conspiracy and solicitation convictions involving controlled substances.[5] We agree that § 971.365(1) allows the State to prosecute certain controlled substance violations as a single crime "if the violations were pursuant to a single intent and design." Nothing, however, requires the State to aggregate all of the violations into a single crime, even if the violations "were pursuant to a single intent and design." *See* § 971.365(1). Indeed, prosecutors generally have broad authority to charge under multiple statutes if an act forms the basis for a crime punishable under more than one statutory provision. ***State v. Moffett***, 239 Wis. 2d 629, 640, 619 N.W.2d 918 (2000) (citation omitted). In short, we view § 971.365(1) as a means of enhancing the State's lawful charging options, not as the legislature's intent to prohibit cumulative punishments for conspiracy and solicitation convictions.

---

Because Lantz purchased over 115 grams of methamphetamine and sold about half to other people, one could reasonably conclude that Lantz's delivery of methamphetamine was the delivery sought to be accomplished by the conspiracy. Therefore, considering Lantz's actions from this view, the acts underlying Lantz's solicitation conviction are distinct from the acts underlying her conspiracy conviction because Lantz was the target of the solicitation deliveries and other people were the target of the conspiracy deliveries.

[5] WISCONSIN STAT. § 971.365 provides in relevant part:

> (1)(a) In any case under … [WIS. STAT. § 961.41(1)(e)] … involving more than one violation, all violations may be prosecuted as a single crime if the violations were pursuant to a single intent and design.
>
> …
>
> (2) An acquittal or conviction under sub. (1) does not bar a subsequent prosecution for any acts in violation of … [§ 961.41(1)(e)] … on which no evidence was received at the trial on the original charge.

¶22    WISCONSIN STAT. § 971.365(2) is also both inapplicable to Lantz's case and unhelpful to her legislative intent argument. Subsection (2) describes the circumstances in which the State may pursue a subsequent prosecution *after* an acquittal or conviction has occurred. The State prosecuted Lantz for solicitation at the same time it prosecuted her for conspiracy; therefore, no subsequent prosecutions occurred in this case. The concerns with piecemeal and consecutive prosecutions addressed by this subsection, like subsec. (1), do not evince an intent to limit the State's lawful charging options in a single case or the punishments that may be imposed after a defendant's conviction on multiple charges in a single case. In all, § 971.365 does not indicate any legislative intent against cumulative punishments for conspiring to deliver methamphetamine and soliciting the delivery of methamphetamine when those crimes are prosecuted together.

¶23    Lantz also argues that WIS. STAT. § 961.45 "shows the legislature's will to prevent a person from begin [sic] punished twice for [the] same acts related to a controlled substance violation." Section 961.45 provides that "[i]f a violation of [WIS. STAT. ch. 961] is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state." Our supreme court explained in *State v. Hansen*, 2001 WI 53, 243 Wis. 2d 328, 627 N.W.2d 195, that § 961.45

> abrogate[s] the "dual sovereignty doctrine" in the context of controlled substance prosecutions. Under the dual sovereignty doctrine, there is no constitutional bar to successive prosecutions for the same offense by different sovereigns. Section 961.45 thus operates as a limitation on the State's power to prosecute where no constitutional limit exists.

*Id.*, ¶10 (citations omitted).

13

¶24 Lantz contends that under WIS. STAT. § 961.45, if a controlled substance violation is a violation in another jurisdiction, a conviction or acquittal in the other jurisdiction "for the same act" is a bar to prosecution in Wisconsin. Relying on *Hansen*, Lantz argues that § 961.45 provides broader protection than the "elements only" test, and it addresses "acts," not "offenses." Lantz further contends that it would be absurd for Wisconsin to bar cumulative punishment for the same act prosecuted in other jurisdictions, but to allow cumulative punishment for the same act prosecuted within Wisconsin. The State responds that § 961.45 addresses only the dual sovereignty doctrine, and that this case has nothing to do with dual sovereignty.

¶25 We agree with the State. WISCONSIN STAT. § 961.45 is inapplicable to Lantz's conspiracy and solicitation convictions because she was never convicted or acquitted in another jurisdiction for an act underlying these convictions. Moreover, § 961.45 shows that the legislature knows how to—and does—limit multiple prosecutions in controlled substances cases when it wants to, but it has not done so here. If anything, that omission implies a legislative intent not to bar the multiple punishments at issue in this case.

¶26 We also disagree with Lantz's absurdity argument. The legislature enacted WIS. STAT. § 961.45 "to abolish the dual sovereignty doctrine by statute." *See State v. Petty*, 201 Wis. 2d 337, 358, 548 N.W.2d 817 (1996). In doing so, the legislature sought to bar successive prosecutions for the same act "where no constitutional limit exists." *Hansen*, 243 Wis. 2d 328, ¶10. The legislature could reasonably, however, choose not to enact legislation that bars cumulative punishments for the same act or offense in Wisconsin because constitutional limits already exist. As discussed, Lantz has double jeopardy protection under the Fifth Amendment of the United States Constitution and its analogous provision in the

14

Wisconsin Constitution. *See Ziegler*, 342 Wis. 2d 256, ¶59. Therefore, our interpretation that § 961.45 does not extend protection beyond the text of the statute to the circumstances of this case is not absurd.

¶27 We conclude our discussion of the applicable statutory language by examining WIS. STAT. § 939.72. The State notes that § 939.72(1)-(2) expressly prohibits convicting a person for being both party to a crime and for conspiring or soliciting to commit that crime. The State argues that these provisions show the legislature's intent to allow convictions for conspiracy and solicitation of the same act because the legislature would have enacted a statute similar to § 939.72 if it intended to prohibit such convictions. Lantz concedes that § 939.72 provides no prohibition against convicting a person for both conspiring to commit a crime and soliciting to commit the same crime; however, Lantz argues that § 939.72 is insignificant because it is not narrowly tailored to drug cases. She asserts the focus should remain on the controlled substance act. Lantz concedes, however, that for nondrug crimes, "it might be fair to reason based on [§] 939.72 that the Legislature intended to allow punishing both conspiracy and solicitation."

¶28 We conclude that the legislature's failure to enact a statute similar to WIS. STAT. § 939.72 that would cover Lantz's circumstances is indicative of its intent to allow convictions for both conspiring to commit a crime and soliciting to commit the same crime, including crimes involving controlled substances. Although the legislature expressly prohibited convicting a person for both being party to a crime and for soliciting or conspiring to commit the same crime, the legislature enacted no prohibition on convicting a person for conspiring to commit a crime and soliciting to commit the same crime. We have already rejected Lantz's arguments regarding WIS. STAT. §§ 971.365 and 961.45 on the merits, and we reject Lantz's suggestion that § 939.72 is less significant compared to those

statutes. If the legislature intended to prohibit convicting a person for both conspiring to deliver methamphetamine and soliciting the delivery of methamphetamine, the legislature would have enacted a statute similar to § 939.72.

¶29 In sum, Lantz has failed to identify any applicable statutory language that indicates a legislative intent against cumulative punishments in her case.

¶30 We next consider the second factor—the legislative history and context of the statutes. The parties both recognize that the legislative history provides little support to what has already been discussed. Lantz suggests that because the legislature enacted the conspiracy statute regarding controlled substances, WIS. STAT. § 961.41(1x), at the same time it enacted the aggregation statute regarding controlled substances, WIS. STAT. § 971.365, the legislature had some knowledge as to how these statutes would interact.

¶31 We disagree that the timing of these enactments adds any benefit to our analysis. As we already discussed, neither of these statutes prohibit, or indicate an intent against, convicting and punishing a person for both conspiring to deliver methamphetamine and soliciting the delivery of methamphetamine. Therefore, we conclude that the legislative history and context of the applicable statutes provide no indication of a legislative intent against cumulative punishments for both conspiracy and solicitation.

¶32 We now consider the third factor—the nature of the proscribed conduct. When evaluating the nature of the proscribed conduct, we must determine "whether the conduct is separated in time or different in nature." *State v. Steinhardt*, 2017 WI 62, ¶33, 375 Wis. 2d 712, 896 N.W.2d 700; *see also State v. Anderson*, 219 Wis. 2d 739, 755-56, 580 N.W.2d 329 (1998) (evaluating the

third factor by referring back to the identity in fact inquiry). As we discussed earlier, Lantz's convictions differed in time because she had sufficient time for reflection after purchasing and selling methamphetamine throughout her long-occurring conspiracy, such that she recommitted herself to the criminal conduct when she later solicited the delivery of methamphetamine. We also concluded that Lantz's convictions were different in nature and constituted a "new volitional departure" because she made deliberate decisions to obtain additional methamphetamine and to advise Yang to deliver such methamphetamine to her. Because Lantz's convictions differed in time and in nature, the nature of the proscribed conduct does not indicate any legislative intent against cumulative punishments for both solicitation and conspiracy.

¶33    Finally, we must consider the fourth factor—the appropriateness of multiple punishments. We determine whether multiple punishments are appropriate by determining whether multiple acts occurred. *Steinhardt*, 375 Wis. 2d 712, ¶34. Lantz begins her argument on this factor by recognizing that "the solicitations were multiple acts and [that] the conspiracy involved multiple acts." Nevertheless, Lantz again argues that because her conspiracy conviction encompassed multiple acts, including the solicitations, her actions underlying her solicitation convictions are inseparable from her acts in furtherance of conspiracy.

¶34    We are unpersuaded by Lantz's attempt to combine all of her actions into her single conspiracy conviction. It is undisputed that Lantz took many actions during the course of an eleven-week period, including purchasing methamphetamine three to four times a week and then reselling roughly half of that methamphetamine to other people. Each and every time Lantz purchased methamphetamine, she acted. *See Hansen*, 243 Wis. 2d 328, ¶21 ("[T]he term 'act' … describe[s] the underlying conduct which comprises an offense."). Lantz

17

also acted when she advised Yang to deliver methamphetamine to her on February 27, 2016, and March 13, 2016. Because different actions formed the basis for each conviction, we conclude that multiple punishments were appropriate in Lantz's case.

¶35 For the foregoing reasons, none of the four factors we employ to discern legislative intent regarding multiplicity show a clear legislative intent against cumulative punishments for both conspiring to deliver methamphetamine and soliciting the delivery of methamphetamine. We conclude that Lantz failed to overcome her burden of rebutting our presumption in this regard.[6]

*II. The circuit court did not erroneously exercise its discretion in imposing Lantz's sentences*

¶36 Lantz next argues that the circuit court improperly disregarded mitigating information about her personal history and background, and it

---

[6] We need not address Lantz's waiver argument. Lantz argues that she did not waive her multiplicity claim by pleading no contest, but if she did, then her trial counsel was ineffective for failing to raise a multiplicity argument. Relying on **State v. Kelty**, 2006 WI 101, 294 Wis. 2d 62, 716 N.W.2d 886, the State argues that Lantz's no-contest pleas "forfeited" her multiplicity claim if we cannot determine "with certainty" that her punishments are multiplicitous. The State contends that "Lantz's [no-contest] pleas preclude her from developing the facts further to prove her claim." We believe the record is sufficient to determine Lantz's multiplicity claim; therefore, we do not conclude that Lantz "forfeited" her multiplicity claim due to her no-contest pleas. The State also does not contend that Lantz "waived" her multiplicity claim by failing to object or raise such claim before entering her pleas. Therefore, the State concedes any argument in that regard. *See* **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.**, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979) (an unrefuted argument is deemed conceded).

Because Lantz premised her ineffective assistance claim on our concluding that she waived her multiplicity claim, we also do not need to address Lantz's ineffective assistance claim. Even if we needed to address the merits of Lantz's ineffective assistance claim, we would conclude that her trial counsel was not ineffective. "It is well-established that trial counsel could not have been ineffective for failing to make meritless arguments." **State v. Allen**, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245. As we explained, Lantz failed to overcome our presumption that the legislature authorized multiple punishments in her case; therefore, any objection from Lantz's trial counsel on multiplicity grounds would have been meritless.

mistakenly believed that she could not remain drug free. Lantz contends the court thus erroneously exercised its discretion, and she should be resentenced.

¶37 Within certain parameters, a circuit court has wide discretion in determining what factors are relevant to a sentence and how much weight to give each factor. *State v. Williams*, 2018 WI 59, ¶47, 381 Wis. 2d 661, 912 N.W.2d 373. Courts must specify the objectives of the sentence, describe the facts relevant to the objectives, and "explain, in light of the facts of the case, why the particular component parts of the sentence imposed advance the specified objectives." *State v. Gallion*, 2004 WI 42, ¶¶40-42, 270 Wis. 2d 535, 678 N.W.2d 197. In other words, a sentencing court must exercise its discretion "on a rational and explainable basis." *Id.*, ¶39 (citation omitted). A sentencing court must consider three primary factors when determining a defendant's sentence: "(1) the gravity of the offense; (2) the character of the defendant; and (3) the need to protect the public." *Williams*, 381 Wis. 2d 661, ¶46. In each case, the sentence imposed shall call for the minimum amount of custody or confinement that is consistent with those three factors. *Gallion*, 270 Wis. 2d 535, ¶44. On appeal, our review is limited to determining whether the circuit court erroneously exercised its discretion. *Id.*, ¶17.

¶38 The circuit court considered the three primary sentencing factors when sentencing Lantz. The court discussed the gravity of the offense, acknowledging that Lantz sold methamphetamine to other people who were addicted, that she was part of a "very significant drug ring," and that selling methamphetamine "is a terrible, terrible offense." The court also considered the need to protect the public, noting that "the public has to be protected from drug dealing" and that society must "get [drug dealers] off the street." Finally, the court considered Lantz's character and her rehabilitative needs. The court expressed

19

disappointment that Lantz used drugs with her daughter and that she used her husband's disability income to purchase drugs. The court recognized that Lantz had rehabilitative needs, and the court wanted to place Lantz in a setting where she could "stay clean."

¶39 Lantz argues that the length of her sentences—which exceeded both the State's and the PSI author's recommendations—and the order that they be served consecutively show that the circuit court erroneously exercised its sentencing discretion. We disagree. "The sentencing court always has an independent duty to look beyond the recommendations and to consider all relevant sentencing factors." *State v. Smith*, 207 Wis. 2d 258, 281, 558 N.W.2d 379 (1997). The court did so here. It acknowledged the recommendations made at sentencing, but it ultimately disagreed with those recommendations. It considered the fact that Lantz had previously been convicted of dealing drugs and robbery, and that Lantz spent four and one-half years in prison on those convictions. The court expressed further concern that Lantz had many chances in her life, but she chose "to get right back into it again." Ultimately, the court concluded that Lantz's case was a "significant prison case."

¶40 Lantz also argues that the circuit court disregarded mitigating information and actually considered such information to be aggravating. Lantz points out that she experienced physical and sexual abuse as a child, which has led her into long periods of depression and resulted in diagnoses of bipolar disorder and posttraumatic stress disorder. Lantz contends that the court viewed this information as aggravating because the court stated: "[A] lot of people have terrible things when they're growing up, but they don't turn to this lifestyle."

¶41    The circuit court did not erroneously exercise its discretion when deciding to give less weight to Lantz's personal history and mitigating factors than she would have preferred.   The court acknowledged the abuse Lantz had experienced, but it noted that "a lot of people have terrible things when they're growing up, but they don't turn to this lifestyle.  They don't wreck other people's lives, they don't put other people at risk."  Although other judges may have given greater weight to Lantz's history of physical and sexual abuse, we cannot conclude that the court erroneously exercised its discretion in this regard.   The court's statements may be blunt from Lantz's perspective, but they provide an explanation for its decision not to impose a lesser sentence.   The court communicated that Lantz's actions put others at risk, and that while her past was unfortunate, the court still needed to hold her accountable.  The court did not err by giving greater weight to the need to protect the public than to Lantz's personal history.

¶42    Finally, Lantz argues that circuit court erroneously believed that she could not remain drug free.   Lantz argues that she had lengthy periods of abstaining from drug use and that she had remained drug free for several years before 2014.    Lantz therefore contends the court erred when stating, "[A]pparently, when you're out in the real world you can't stay off the drugs."

¶43    We conclude the circuit court did not err when considering Lantz's apparent inability to remain drug free.  The court discussed Lantz's long history of drug use, beginning at the age of fourteen.  The court also determined that Lantz had rehabilitative needs and that she needed to be placed in a setting where she could "stay clean."  Although Lantz may have had periods of sobriety during her life, it is undisputed that she fell back into using drugs when she conspired to deliver methamphetamine and solicited the delivery of methamphetamine.

Therefore, the court could reasonably infer that Lantz had not shown an ability to remain permanently sober, and it did not err in this regard.

¶44 For the foregoing reasons, we conclude the circuit court adequately explained its rationale and did not erroneously exercise its discretion when sentencing Lantz. That the court imposed longer sentences than were recommended by the parties, gave less weight to Lantz's personal history and mitigating factors than she would have liked, and determined that Lantz could not remain drug free did not render the court's overall reasoning insufficient under governing legal standards.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.